**In re GARDINIER, INC., et al., Debtors.**

**Bankruptcy No. 85–329 BK T 11.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

June 3, 1985.

Robert J. Wahl, St. Petersburg, Fla., for Creditors' Committee.

Douglas P. McClurg, Jacksonville, Fla., for Debtors.

Jeffery W. Warren, Tampa, Fla., for Texas Gulf, Inc.

Richard Prosser, Tampa, Fla., for Kilgore Real Estate.

## ORDER ON OBJECTIONS TO THE ASSUMPTION OF CONTRACTS TO PAY BROKER'S COMMISSIONS

ALEXANDER L. PASKAY, Chief Judge.

This is a Chapter 11 case and the matters under consideration are two Motions to Assume Executory Contracts filed by Gardinier Inc., and Gardiniers Resorts, Debtors in the above-styled consolidated case. The Debtors sought to assume two contracts for the purchase and sale of two parcels of real estate pursuant to Section 365 of the Bankruptcy Code. While not opposing the sale of the properties, the Creditor's Committee objected to the payment of the broker's commission as set forth in the contracts on the grounds that the brokerage agreement constituted a separate and distinct contract which could not be assumed. The Court granted the Debtors' motions to assume the executory contracts and approved the sale of properties but ordered the commissions due the brokers to be placed in escrow pending a determination of whether the agreements to pay the commissions are severable from the purchase and sale contracts.

The facts pertinent to a resolution of this issue as alleged in the motions may be summarized as follows:

On February 11, 1985, the Debtors, Gardinier, Inc. and Gardinier Resorts, Inc. filed a petition for relief pursuant to Chapter 11 of the Bankruptcy Code. Prior to filing its petition, Gardinier Inc. entered into a transaction that involved a parcel of real estate which it owned, known as the Goldstein tract. The terms and conditions of the transaction were memorialized in an instrument titled "Contract for Sale of Real Estate" which was signed by the Debtor, broker, and purchaser and shall be referred to as the Goldstein instrument.

Contained in the Goldstein instrument are the terms and conditions of the sale of the Goldstein tract by Gardinier Inc. to the purchaser, Boyd W. Burley. The terms applicable to the sale include a purchase price of $5,117,100.00; the payment of documentary stamps, recording fees and intangible tax; the proration of taxes, assessments and rents; title insurance and an earnest money deposit of $100,000. For purpose of clarity the collection of these terms relating to the sale of the real estate shall be referred to as the purchase and sale agreement.

In addition to the terms of sale, the Goldstein instrument contains provisions regarding the payment of a brokerage commission which shall be referred to as the brokerage agreement. The text of the brokerage agreement specifically states that the seller "agrees to pay to the broker, as commission for his services in making sale of said property, a sum equal to 10% of the purchase price...." The remainder of the terms state in essence that if the buyer fails to perform he forfeits his deposit which will be divided between the broker and Gardinier, Inc. If Gardinier Inc. fails to perform it must pay the broker his full commission.

Like Gardinier, Inc., Gardinier Resorts, Inc. entered into a prepetition transaction involving a parcel of real estate it owned known as the Lido Key Lot. The instrument involving the Lido Key Lot is similar to the Goldstein instrument and contains terms and conditions normally found in a contract for the sale of real estate. Additionally, the Lido Key instrument also contains a brokerage agreement. The terms and conditions of the brokerage agreement are set forth separately at the end of the instrument under a subtitle "Commission Agreement" and are separately signed.

In approving the sale of the Goldstein Tract and the Lido Key Lot, this Court has already ruled that the purchase and sale agreements were executory and assumable but the brokerage agreements were not executory because the brokers had performed their obligations prepetition when they procured ready, willing and able buyers. The question then before this Court is whether the brokerage agreements are distinct and separate contracts from the pur-

chase and sale agreements even though they are contained in the same instrument.

Kilgore Real Estate, the brokers for Gardinier, Inc. in the sale of the Goldstein Tract, have taken the position that the instrument is a single contract and that the brokerage agreement may not be severed from the purchase and sale agreement. The broker bases its position upon the well settled rule of law that if a debtor elects to assume an executory contract he must assume all of its benefits and obligations. A debtor cannot pick and choose those parts he deems desirable and reject the unwanted portions. Based on this premise, the broker argues that Gardinier cannot assume the benefits of the purchase and sale agreement and then reject the brokerage agreement.

In response the Creditors' Committee objects to the payment of the commission and takes the position that brokerage agreements constitute separate and independent contracts which cannot be assumed or rejected, and that the brokerage agreements merely give rise to unsecured prepetition claims which may not be paid out of the proceeds of the sales.

The Court accepts the proposition that an executory contract must be assumed or rejected in its entirety. *In re Monsour Medical Center*, 11 B.R. 1014 (W.D.Penn. 1981); *In re Rovine Corp.*, 6 B.R. 661, 666 (Bankr.W.D.Tenn.1980). However, the fact that a transaction is set forth in only one instrument does not alone preclude the existence of several separate contracts. *Bianchi Bros. v. Gendron*, 292 Mass. 438, 198 N.E. 767 (1935); *Stoneburner v. Fletcher*, 408 N.E.2d 545 (2nd DCA Ind. 1980); 4 Corbin on Contracts Section 696. A single document may contain two distinct contracts which may be enforced independently. *Cromwell v. Himes*, 117 Ind.App. 56, 69 N.E.2d 135 (1946).

The issue of severability of a contract is determined by the intention of the parties as evidenced by the terms of the contract. *Dozier v. Shirely*, 240 Ga. 17, 239 S.E.2d 343 (1977). Factors used by some courts in determining the intent include the subject matter, nature and purpose, and apportionment of consideration of the contract. *Stoneburner*, p. 549; *Florida Mtg. Financing, Inc. v. Flagler Plaza Co.*, 308 So.2d 571 (3rd DCA 1975). Moreover, the court in *Flagler*, supra, stated that a contract is indivisible "where the entire fulfillment of the contract is contemplated by the parties as the basis of the arrangement."

In *Flagler* a mortgage broker brought suit against the defendant for payment of a broker's commission arising from a loan commitment application. The defendant requested the mortgage broker to obtain two loans for the defendant, one loan to enable the defendant to purchase a piece of property and the other loan for development of the property. The broker obtained the development loan but not the purchase loan. The court found that the contract was entire because the parties contemplated that both loans had to be produced before a broker's commission would be earned. Therefore, the contract was not severable.

Looking at the instruments in the case at bar, the terms of the instruments address the payment of the broker's commission in the event the sale of the property is not closed. As noted earlier, the brokerage agreement requires the payment of the commission regardless of the closing of the sale. Clearly these terms evidence the parties' intent that the sale did not have to close in order for the brokerage agreement to be enforceable. Since the parties did not contemplate that both agreements had to be fulfilled as a condition to enforcing each agreement, the *Flagler* decision indicates that the purchase and sale agreements are severable from the brokerage agreements.

A consideration of the other factors also suggests that the brokerage agreements are severable from the purchase and sale agreements in each instrument. For instance, the nature and purpose of each agreement contained in the instruments are different. One agreement addresses the sale of property. The other agreement contemplates an employment contract

which is not dependent upon the closing of the sale.

The consideration for each agreement is entirely separate and distinct. The consideration for the purchase and sale agreement is the payment of the purchase price of the property whereas the payment of the commission stands as consideration for obtaining a ready, willing and able buyer, regardless of whether the sale is concluded. In fact, the brokers' services do not constitute consideration to the buyers because the instruments expressly provide that the sellers, Gardinier and Gardinier Resorts, will pay the brokers' commission. See *Liebowitz v. Wright Properties, Inc.*, 427 So.2d 783 (4th DCA Fla.1983).

The cases cited previously involve only two parties. In this instance there are three parties. The seller's commitments to the broker are different and independent from those owed to the purchaser. In fact, there are no promises running between the broker and purchaser. This is natural because there are two separate contracts with independent obligations and promises.

The only interrelation between these two agreements that appears from the face of the documents is that all of the terms of the separate agreements are contained on the same piece of paper.

In conclusion, this Court is satisfied that this is not an instance where a debtor is attempting to assume the beneficial portions of a contract and reject those it deems unfavorable. Rather, the instruments in question contain two separate and distinct contracts. The brokerage agreements are distinct and separately enforceable from the purchase and sale agreements and therefore require independent review. Since the brokers have completed their obligations by procuring ready, willing and able buyers and are only awaiting payment for their services, their contracts are not executory and cannot be assumed. This being the case, payment of their commission out of the sales proceeds shall be denied without prejudice to their right to file a proof of claim for an unsecured,

nonpriority, prepetition claim for their brokerage commissions.

Accordingly, it is,

ORDERED, ADJUDGED and DECREED that the Creditors Committee's Objections to the Assumption of Contracts to Pay Broker's Commissions be and the same hereby is sustained. It is further,

ORDERED, ADJUDGED and DECREED that the money held in escrow for payment of the real estate commissions shall be turned over to the Debtors in Possession. It is further,

ORDERED, ADJUDGED and DECREED that Kilgore Real Estate and Michael Saunders & Company may file a proof of claim for their brokerage commissions if so deemed advised.