**In re Joseph MOSKOVIC, Debtor.**

**Bankruptcy No. 87 B 20315.**

United States Bankruptcy Court,
S.D. New York.

Aug. 27, 1987.

Barr and Faerber, Spring Valley, N.Y., for debtor.

Angelo John Marino, New York City, for The Chase Manhattan Bank, N.A.

Jeffrey L. Sapir, Hartsdale, N.Y., trustee.

DECISION ON ORDER TO SHOW CAUSE SEEKING ORDER DIRECTING TRUSTEE TO PAY COMMISSIONS CLAIMED BY A REAL ESTATE BROKER

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Chapter 7 debtor, Joseph Moskovic, and his nondebtor spouse have moved for an order directing the trustee in bankruptcy to pay the commissions claimed by a real estate broker from the proceeds of the trustee's sale of their home before these proceeds are divided between the debtor's estate and his nondebtor wife.

The debtor filed with this court his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 2, 1987. At the time of the filing of his petition, the debtor listed as an asset real property which he jointly owned with his nondebtor spouse, Hilda Moskovic, located in Spring Valley, New York and which was their residence. Prior to the filing of the Chapter 7 petition, the debtor and his wife had entered into a contract of sale dated April 21, 1987 whereby they agreed to sell the property for the sum of $220,000. The property was subject to three separate mortgages totalling approximately $141,-000.

Paragraph 8 of the contract of sale specifically refers to the existence of a separate brokerage agreement which the debtor and his wife had entered into previously with Tap 'N See Realty Corp. and that the sellers agreed to pay the brokerage commissions with respect to the sale. Paragraph 8 reads as follows:

8. PURCHASER hereby states that PURCHASER has not dealt with any broker in connection with this sale other than Tap 'N See Realty Corp. and SELLER agrees to pay the broker the commissions earned thereby (pursuant to *separate agreement*).

(Emphasis added).

In paragraph 18 of the rider annexed to the contract of sale, the seller advised the purchaser that the debtor's wife, Hilda Moskovic, is a principal of the real estate broker to whom the brokerage commissions will be paid, namely Tap 'N See Realty Corp. The text of this paragraph is as follows:

18. Purchasers acknowledge that they have been advised that the seller, Hilda Moskovic, is a principal of Tap 'N See Realty Corp., the real estate broker herein.

The separate brokerage agreement which the debtor and his wife entered into provides that the broker will be paid a commission for obtaining a buyer for the property in question at the rate of 6% of the selling price up to the sum of $100,000 and 3% of the balance beyond $100,000.

Pursuant to an order to show cause dated July 10, 1987, the trustee applied to this court for an order permitting him to sell the real estate owned by the debtor and his wife for the sum of $220,000 to the purchaser named in the contract of sale dated April 21, 1987. In his supporting affidavit, the trustee stated that the real estate broker, Tap 'N See Realty Corp., will seek the sum of $9,600.00 as real estate commissions. The issue now is whether the sum of $9600.00 claimed by the real estate broker should be treated as an administration expense or as a general unsecured claim. The Chase Manhattan Bank, N.A., a judgment creditor, objects to the payment of the brokerage commission from the proceeds of the sale and contends that Tap 'N See Realty Corp. is an unsecured, general creditor because the brokerage agreement was a separate agreement and not part of the contract of sale which the trustee was authorized to assume.

## DISCUSSION

The contract of sale specifically refers to the brokerage agreement as a "separate agreement" entered into between the sellers of the real estate and the broker, Tap 'N See Realty Corp., with respect to which the sellers agreed to pay the brokerage commissions on the sale. Therefore, it is clear that the brokerage agreement is a separate agreement from the real estate contract which the trustee was authorized to assume. The case of *In re Gardinier, Inc.*, 50 B.R. 491 (Bankr.M.D. Fla.1985) presents a similar factual pattern. The debtor entered into a prepetition transaction involving a parcel of real estate. The terms and conditions of the brokerage agreement regarding the sale were set forth separately at the end of the contract of sale and separately signed. Thereafter, the debtor filed a Chapter 11 petition and then sought and obtained court permission to assume the contract and sell the property pursuant to the prepetition contract of sale. Judge Paskay noted that in a previous transaction in which the brokerage contract was not set forth in full in the contract of sale, he had ruled that the contract of sale was executory and assumable, but that the brokerage agreement was not executory because the brokers had performed their obligations prepetition when they procured ready, willing and able buyers. Judge Paskay then ruled that the fact that the brokerage contract was set forth in full at the end of the contract of sale did not detract from the fact that the contract of sale and the brokerage contract should be treated as two separate contracts; the former was executory and assumable and the latter was performed by the broker and was therefore not assumable. In support of this conclusion, he ruled as follows:

The consideration for each agreement is entirely separate and distinct. The consideration for the purchase and sale agreement is the payment of the purchase price of the property whereas the payment of the commission stands as consideration for obtaining a ready, willing and able buyer, regardless of whether the sale is concluded. In fact, the brokers' services do not constitute consideration to the buyers because the instruments expressly provide that the sellers, Gardinier and Gardinier Resorts, will pay the brokers' commission. *See Liebowitz v. Wright Properties, Inc.*, 427 So.2d 783 (4th DCA Fla. 1983).

The cases cited previously involve only two parties. In this instance there are three parties. The seller's commitments to the broker are different and independent from those owed to the purchaser. In fact, there are no promises running between the broker and purchaser. This is natural because there are two separate contracts with independent obligations and promises.

*In re Gardinier*, 50 B.R. at 494.

■ The brokerage contract between the sellers and the broker cannot be treated as executory and therefore, assumable by a debtor or a trustee in bankruptcy, because by obtaining a ready, willing and able buyer before the filing of the petition, the broker has already earned the right to claim brokerage commissions from the debtor and his wife. An obligation to pay money, which is all that remains for the debtor to perform, cannot be regarded as calling for any further performance on the part of the broker so as to be considered as executory. *Carlson v. Farmers Home Administration (In re Newcomb)*, 744 F.2d 621, 624 (8th Cir.1984); *Employees' Retirement System of the State of Hawaii v. Osborne, (In re THC Financial Corp.)*, 686 F.2d 799, 804 (9th Cir.1982); *In re Grayson-Robinson Stores, Inc.*, 321 F.2d 500, 502 (2d Cir.1963). The real estate broker is a prepetition creditor holding a general unsecured claim against this estate and does not have an administration expense priority claim which would justify the brokerage commissions being paid directly from the proceeds of the sale.

The debtor argues that the broker conferred a benefit upon this estate and that the broker's services should now be authorized *nunc pro tunc.*

The brokerage agreement may not be approved *nunc pro tunc* for the reason that when the broker was retained by the debtor and his wife, the debtor had not yet filed his Chapter 7 petition. Accordingly, the court did not yet have jurisdiction of this case. When the debtor did file his Chapter 7 petition on July 12, 1986, the broker had already earned the claimed brokerage commissions because a ready, willing and able purchaser had been obtained. The brokerage contract was no longer executory because the broker then had a general unsecured claim for brokerage commissions. A *nunc pro tunc* approval of the brokerage contract would simply elevate an unsecured general claim to the status of an administration priority expense without any further benefit to the estate. The broker had already performed the brokerage services for the debtor and his wife before the Chapter 7 petition was filed.

In light of the foregoing, the debtor's motion for an order directing payment of the brokerage commission from the proceeds of the sale of the property in question is denied.

IT IS SO ORDERED.