**In re CUTTERS, INC., Debtor.**

**Bankruptcy No. 389–02384.**

United States Bankruptcy Court, M.D. Tennessee.

Aug. 29, 1989.

Linda W. Knight, Gullett, Sanford, Robinson & Martin, Nashville, Tenn., for Cutters, Inc.

Wallace W. Dietz, Tim K. Garrett, Bass, Berry & Sims, Nashville, Tenn., Daniel S. Mason, Joseph Bell, Mitchell S. Meyer, Ronald Elsberry, Furth, Fahrner, Bluemle & Mason, San Francisco, Cal., for Singer Sewing Machine Co.

## ORDER

GEORGE C. PAINE, II, Chief Judge.

This matter comes before the court on the debtor's motion to reject an executory contract. The other party to the contract, Singer Sewing Machine Company (Singer), objects to the rejection of the contract.

The parties entered into the contract in question on or about July 8, 1987. Before that time the debtor was known as Cutters Exchange, Inc. Among its various enterprises Cutters Exchange operated a catalog mail order division selling sewing machine parts and related equipment to the apparel industry. The agreement transferred this catalog division to Singer. Under the terms of the agreement Singer bought the name Cutters Exchange, Inc., all copyrights, trademarks, tradenames, styles, catalogs, and related graphics, and assumed certain executory contracts including a lease on a computer and related software. Also included in the list of assets purchased was a covenant by the debtor and the family that owned the debtor not to compete with the catalog division in the United States for four years.

Singer also bought a portion of the inventory of products sold through the catalog division. The agreement divided the inventory into three categories: current, slow moving, and obsolete. The inventory was divided into these categories by identifying how many of each item actually sold in 1986. This was considered one year's inventory for that item. These amounts were multiplied by four to represent four years' inventory. This four-year inventory was called "current inventory." Singer purchased the current inventory.

If an item sold in 1986 but the inventory of that item exceeded four times the number sold in 1986, this excess was put into the category of slow moving inventory. The debtor retained the slow moving inventory. If items were not sold at all in 1986 they were placed into the category of obsolete inventory. Again the debtor retained the obsolete inventory.

Singer paid approximately $5 million for these various assets. Paragraph 2, subparagraph (a) of the purchase agreement indicates that Singer paid approximately $2.5 million for the current inventory. Paragraph 2, subparagraph (b) states that Singer paid an additional $2.5 million for the remaining assets including the trademarks, copyrights, tradenames, unexpired executory contracts and leases and the covenants-not-to-compete.

Much of the rest of the purchase agreement consists of various preconditions for completion of this sale of assets and representations from each party of its ability to make the transaction and warranties related to those representations. Among these statements was a covenant that Singer would hold the debtor harmless on any potential liability arising out of Singer's performance or failure to perform on the assumed contracts and leases.

Paragraph 14 of the purchase agreement is entitled "Further Agreements of Both Parties." This section contains various promises by both parties to perform certain acts after the closing of the sale of the assets. For example, subparagraph (a) of paragraph 14, indicates that the buyer may operate the catalog division on the debtor's premises for up to six months. Similar short term promises constitute most of the further agreements. The one agreement between the debtor and Singer which seems to still be subject to future performance is contained in subparagraphs (b) through (f). Under these subparagraphs the debtor agreed to consign the slow-moving inventory for 36 months to Singer. Both Singer and the debtor agreed to use their best efforts to sell the slow moving and obsolete inventory at prices established by the debtor and acceptable to Singer. The debtor specifically agreed to sell the slow-moving inventory within the United States through Singer. The debtor also agreed to pay Singer a ten percent commission on all sales of slow-moving inventory regardless of who initiated the sale and to pay Singer a 7.5 percent commission on sales of obsolete inventory which Singer initiated.

In July, 1987 the debtor transferred the assets to Singer. Singer established a new subsidiary called Cutters Exchange, Inc. The debtor changed its name to Cutters Sewing Technology, Inc. and later to Cutters, Inc. The debtor consigned the slow-moving inventory to Singer's new subsidiary. The debtor's president Art Rebrovick, Jr. became the head of the Singer subsidiary, Cutters Exchange, Inc. He occupied this position for one year. At the end of that year he went back to work for the debtor. Shortly after he returned to the debtor he became president of the debtor.

In September, 1988 Singer sued the debtor for alleged violations of trademark and copyright law and of the covenant-not-to-compete contained in the purchase agreement at issue here. February 27, 1989 the district court for the Middle District of Tennessee issued a preliminary injunction against the debtor enjoining it from violating Singer's trademark and copyright rights and from violating the covenant-not-to-compete contained in the purchase agreement.

In March 1989, the debtor commenced this Chapter 11 proceeding and moved to reject the purchase agreement as an executory contract.

In ruling on this motion the court must first determine whether the purchase agreement is an executory contract and second whether rejection is in the best interest of the estate. *Borman's Inc. v. Allied Supermarkets, Inc.*, 706 F.2d 187, 189 (6th Cir.1983). A contract is executory if the obligations of both the debtor and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the other from performing. *Collingwood Trading Co., Inc. v. Coast Trading Co. (In re Coast Trading Co.)*, 744 F.2d 686, 690 (9th Cir.1984).

▪ Debtors must assume or reject executory contracts in their entirety. They may not pick and choose various executory clauses and reject them only or assume them only. *Burger King Corp. v. Rovine (In re Rovine Corp.)*, 6 B.R. 661, 666 (Bankr.W.D.Tenn.1980).

However, if a document purports to contain a single contract but in reality contains separate severable agreements, then the debtor may reject a severable executory agreement. *In re Gardinier, Inc.,* 50 B.R. 491, 493 (Bankr.M.D.Fla.1985). That seems to be the case here.

▪ In the relevant portions of this document the parties contemplated two basic transactions. First on July 8, 1987, the debtor transferred significant portions of its assets to Singer and Singer paid the debtor $5 million. Second, the parties agreed that the debtor would consign the slow-moving inventory to Singer and that both the debtor and Singer would work together to sell the slow-moving inventory and the obsolete inventory. They also contemplated that the sale of the slow-moving inventory would be through Singer. Singer would receive a commission on its sales of obsolete inventory and a commission on all sales of slow-moving inventory.

The first transaction seems to be fully performed or so substantially performed that it is not executory. The debtor transferred the assets and Singer paid $5 million. The second agreement seems to be executory. Both parties have significant future obligations to market slow and obsolete inventory. There is such substantial performance remaining that the breach by one would relieve the other of its obligation to perform. Paragraph 14 subparagraphs (b) through (f) are a severable executory contract.

▪ The parties disagree over whether two provisions of the purchase agreement should be considered part of the completed sale of assets or part of the executory agreement to use best efforts of both companies to sell slow moving and obsolete inventory. The debtor asserts that the covenant-not-to-compete is part of the executory contract and as such can be rejected. Singer claims that its covenant to hold the debtor harmless on contracts and leases that it assumed from the debtor is part of the executory agreement and must be rejected along with the rest of the executory agreement.

The court finds that both of these clauses are integral parts of the sale of assets and are not connected to the executory agreement to sell slow moving and obsolete inventory. First paragraph 2, subparagraph (b) specifically states that part of what Singer purchased with its $5 million was the covenant-not-to-compete. Thus, Singer performed its obligation in exchange for that covenant and that covenant is not part of the executory agreement. Second, the debtor assigned its contracts and unexpired leases to Singer completely in July, 1987 and received in exchange for that part of the $5 million and the covenant to hold them harmless on these contracts. Again, this is something which the parties contemplated to be part of the sale of assets completed in 1987.

These two outstanding covenants in the sale of assets are not so significant as to render the entire agreement executory. They are part of the sale of assets and so may not be rejected or assumed under § 365.

The court finds that the only separate severable executory agreement which may be subject to the debtor's assumption or rejection under § 365 is contained in paragraph 14, subparagraphs (b) through (f) of the purchase agreement.

The court will grant the motion to reject the executory contract if the debtor-in-possession can show that, in its business judgment, rejection would benefit the estate. With few exceptions this is a light burden to meet. *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 523, 104 S.Ct. 1188, 1194, 79 L.Ed.2d 482 (1983); *Group of Institutional Investors v. Chicago, M., St. P. & P. R. Co.,* 318 U.S. 523, 550, 63 S.Ct. 727, 742, 87 L.Ed. 959 (1943); *Lubrizol Enterprises, Inc. v. Richmond Metal/Finishers, Inc.,* 756 F.2d 1043, 1046–47 (4th Cir.1985).

▪ The debtor's president, Rebrovick, testified that he is experienced in the apparel and sewing industries and that rejection of the executory contract would be in the best business interest of the estate. Rebrovick testified that debtor could materially increase revenues if it were freed from the current arrangement with Singer.

Rebrovick testified that the debtor could no longer work with Singer. The court finds his testimony to be credible and also finds that it meets the debtor's burden under the business judgment test.

Singer attempted to show that rejection would not be in the estate's best interest. Singer attempted to prove that the debtor could effectively operate under the executory contract. Singer then argued that because of the existing preliminary injunction the debtor could not sell slow moving and obsolete inventory outside the executory contract.

The evidence is unpersuasive. Rebrovick testified that the status quo is so bad that the estate would be better off rejecting the executory contract and taking the risk that it may be able to secure any needed modification of the District Court's injunction. This is a valid business judgment which Singer's evidence does not overcome.

Singer also asserted in its memorandum that the debtor would violate the preliminary injunction if the executory contract were rejected and such violations would disproportionately damage Singer. This court need not decide whether a disproportionate effect on a particular creditor is relevant under § 365 because Singer presented no evidence to support its assertion that the debtor planned to violate the District Court's order.

Last, Singer offered to prove that rejecting its covenant to hold the debtor harmless on the contracts and leases that it assumed would tremendously increase the liabilities of the estate. Such evidence is not relevant since the covenant is part of the completed contract and cannot be rejected.

The court grants the debtor's motion to reject the executory contract contained in paragraph 14, subparagraphs (b), (c), (d), (e), and (f). The remaining portions of the agreement are part of the separate, completed contract and cannot be rejected.

The court is aware that it recently held that a debtor could reject a covenant-not-to-compete as part of an executory contract. *Silk Plants, Etc., Inc. v. Register (In re*

*Register)*, 95 B.R. 73 (Bankr.M.D.Tenn. 1989). However, in that case the covenant-not-to-compete was part of an executory franchise agreement. Here the covenant-not-to-compete is part of a completed contract and as such may not be rejected because it is not part of an executory contract.

IT IS, THEREFORE, SO ORDERED.