In re INDIAN RIVER HOMES, INC., Plaintiff,

v.

The SUSSEX TRUST COMPANY, Defendant.

Civ. A. No. 89–254–CMW.

United States District Court, D. Delaware.

Dec. 1, 1989.

James L. Patton, Jr., of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiff.

Michael B. Joseph, of Priestly & Joseph, Wilmington, Del., for defendant.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This is an appeal from an order of the Bankruptcy Court. The April 14, 1989 order approved the assumption of an agreement of sale relating to certain real property entered into by Appellee Indian River Homes, Inc. (hereinafter referred to as "debtor"). Appellant Sussex Trust objects to the Bankruptcy Court's approval of that portion of the agreement of sale which provides for the payment of fees and commissions to an attorney and a real estate agency (hereinafter referred to as "the professionals"). Sussex Trust also objects to the Bankruptcy Court's approval of the employment of the professionals *nunc pro tunc* for purposes of the agreement of sale. This court has jurisdiction pursuant to 28 U.S.C. § 158(a).[1]

## FACTUAL BACKGROUND

On March 30, 1989, the debtor filed a voluntary petition seeking reorganization relief under Chapter 11 of the Bankruptcy Code. The debtor is in the business of developing and selling real estate projects. Prior to filing its petition, the debtor had entered into an agreement of sale on October 14, 1988 relating to real property in a development called "Gull Point". On December 19, 1988, the sales contract was amended with an addendum providing that the debtor would pay a 3½ percent commission to Indian River Land Company, a real estate agency, and a 3½ percent "attorney's fee" to J. Everett Moore, Jr., Esq.[2]

---

1. 28 U.S.C.A. § 158(a) (West Supp.1979) provides that the district court shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of the bankruptcy court. Since no motion for leave to appeal an interlocutory order was filed, *see* Bankr.R. 8001(b) (West Supp.1989), the parties are apparently treating the Bankruptcy Court's order as final. *See F/S Airlease II, Inc. v. Simon,* 844 F.2d 99, 103 (3d Cir.); *cert. denied,* — U.S. ——, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). This court believes that the Bankruptcy Court's order is indeed final. *See In re Victoria Station Inc.,* 875 F.2d 1380, 1382 (9th Cir.1989) (an order concerning the assumption of a lease is reviewable as a separate and discrete matter); *F/S Airlease II, Inc. v. Simon,* 844 F.2d at 103 (a bankruptcy court's order granting *nunc pro tunc*

approval of professional employment is a final order); *In re Sax,* 796 F.2d 994, 996 (7th Cir. 1986) (district court orders approving the sale of a debtor's property are final and immediately appealable).

2. The court considers the "attorney's fee" to be in fact a brokerage commission. First, debtor in its answering brief refers to a "7 percent commission, to be split between the Professionals." Second, the record of the bankruptcy hearing indicates the key role played by the attorney in procuring the buyer for Gull Point. The buyer was introduced to the debtor/seller because the attorney knew someone who worked for the buyer. Appendix to Answering Brief at Exhibit G (Examination of Carlton Moore at 32). The attorney had in fact been making an effort for some time to sell several of

After filing its bankruptcy petition, the debtor filed an application as debtor-in-possession on April 3, 1989 seeking Bankruptcy Court approval of the debtor's assumption of the agreement of sale.[3] Appellant Sussex Trust, a creditor of the debtor, objected to the application. After conducting a hearing, the Bankruptcy Court entered an order on April 14 granting the application. The order approved assumption of the entire agreement of sale, including the commissions addendum.[4] The order also approved the employment of the professionals [5] *nunc pro tunc* [6] to March 30, 1989 as well as professional fees, solely for the purposes of the Gull Point sale. Sussex Trust took this appeal from the April 14 order.

This court hereby reverses that portion of the Bankruptcy Court's order approving the assumption of the commissions addendum to the agreement of sale. The court affirms the Bankruptcy Court's approval of the professionals' employment *nunc pro tunc* to the date of the petition, for purposes of the Gull Point sale. The court vacates the awards of professional fees and remands this case to the Bankruptcy Court for its consideration of the appropriate amount of fees in light of this opinion.

## THE COMMISSIONS ADDENDUM

A district court ruling on an appeal from the Bankruptcy Court may not set aside the bankruptcy judge's findings of fact unless they are clearly erroneous. Bankr.R. 8013 (West Supp.1989). However, the district court has plenary review over legal questions. *See F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 103 (3d Cir.); *cert. denied*, —— U.S. ——, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). In addition, the district court reviews discretionary decisions under an abuse of discretion standard. *See id.*

The debtor in this case had sought approval of its assumption of the agreement of sale pursuant to 11 U.S.C. § 365 and approval of the completion of the sale pursuant to 11 U.S.C. § 363(b)(1). Appendix to Answering Brief, Exhibit G at 57; *see In re Gardinier, Inc.*, 831 F.2d 974, 975 (11th Cir.1987); *cert. denied*, —— U.S. ——, 109 S.Ct. 140, 102 L.Ed.2d 112 (1988). Section 365(a) of the Bankruptcy Code provides that the trustee in bankruptcy may assume or reject any executory contract of the debtor, subject to the court's approval. 11 U.S.C.A. § 365(a) (West Supp.1989). A debtor-in-possession has all the powers of a bankruptcy trustee. 11 U.S.C.A. § 1107(a) (West Supp.1989). This court holds that the Bankruptcy Court erred as a matter of law [7] in its approval of the debtor's assumption of the entire agreement of sale, for two reasons. First, the commissions addendum forms a contract separate from the land sale contract. Second, the com-

---

the debtor's projects. *Id.* (Examination of Carlton Moore at 33).

3. The debtor also filed another application on April 3 for approval of a second pre-petition real estate contract. The Bankruptcy Court's actions with respect to that contract are not the subject of this appeal.

4. The Bankruptcy Court noted, however, that the land company might not even be due its commission. The land company and the debtor had been merged in January 1988 but the land company was sold to new owners at about the time of the Gull Point sale. Appendix to Answering Brief at Exhibit G (Examination of Carlton Moore at 22–23). The court noted that the land company would not be due a commission if it had negotiated the Gull Point sale prior to the separation of the two companies. *Id.* at 53. The April 14 order provides that the land company's commission be held in escrow pending a resolution of the issue.

5. The order approved the employment of the land company and of Mr. Moore's law firm, Moore & Hitchens, P.A.

6. *Nunc pro tunc* is a Latin phrase meaning "now for then". Black's Law Dictionary 964 (5th ed. 1979). It is used when an act has retroactive effect. *See id.*

7. The question of whether the fee addendum is a separate, executory contract is a mixed question of law and fact. An appeals court must break down mixed questions of law and fact, applying the appropriate standard of review to each component. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir.1989). The result reached here is not based on a review of the facts but rather on a review of the Bankruptcy Court's application of the law to the facts. The district court thus has plenary review. *See Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir.1981).

missions contract was not executory, and thus the debtor had no power to assume it.[8]

■ The first issue the court will address is whether the addendum is a separate contract. An executory contract must be assumed or rejected in its entirety. *In re Gardinier*, 50 B.R. 491, 493 (Bankr.M.D. Fla.1985). However, the fact that a transaction is set forth in one instrument is not conclusive evidence that the parties intended to make only one contract. *In re Gardinier, Inc.*, 831 F.2d 974, 976 (11th Cir.1987); *cert. denied,* — U.S. —, 109 S.Ct. 140, 102 L.Ed.2d 112 (1988); *see* 3A A. Corbin, *Corbin on Contracts* § 696, at 291 (1960) (a writing may have been executed as a mere memorial of several separate transactions). Two courts that have examined whether a provision for a brokerage commission in a land sale contract is a separate agreement have held in the affirmative. *In re Gardinier, Inc.*, 831 F.2d at 975; *In re Moskovic*, 77 B.R. 421, 422 (Bankr.S.D. N.Y.1987). In *Gardinier*, the court looked to several factors in ruling that a brokerage provision was a separate agreement. For example, the court noted that the nature and purpose of a land sale agreement and a brokerage agreement are different. 831 F.2d at 976. The former addresses the sale of property, while the latter is an employment contract. *Id.* In addition, the court noted that a brokerage agreement involves promises between the seller and the broker only, with no promises running between the buyer and the broker. *Id.* This court is satisfied that the rationales discussed in the *Gardinier* opinion, as well as the fact that the commissions addendum was entered into two months after the initial contract, lead to the conclusion that the addendum was a contract separate from the land sale agreement. *But see Matter of Steelship Corp.*, 576 F.2d 128, 133 (8th Cir.1978) (trustee's approval of a sale of assets was also an assumption of the debtor's agreement to pay a brokerage fee).

■ The next issue the court must decide is whether the commissions agreement was executory, and thus assumable.

Whether a contract is executory within the meaning of the Bankruptcy Code is a question of federal law. *In re Munple, Ltd.*, 868 F.2d 1129, 1130 (9th Cir.1989). The Bankruptcy Code contains no definition of an executory contract. The legislative history states that the term "generally includes contracts on which performance remains due to some extent on both sides." S.Rep. No. 989, 95th Cong., 2d Sess. 58, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5844. Many courts have adopted the definition of executory contracts set forth by Professor Countryman: "contract[s] under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973); *see Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 (3d Cir.1989); *In re Munple, Ltd.*, 868 F.2d 1129, 1130 (9th Cir.1989).

This court finds that the commissions addendum was not executory. The general rule in Delaware is that a broker may recover a commission only when the broker is the procuring cause of a consummated transaction. *B–H, Inc. v. "Industrial America" Inc.*, 253 A.2d 209, 213 (Del. 1969). One exception to this rule is that, if a duly authorized broker produces a prospect ready, willing, and able to meet his principal's expressed terms, the commission has been earned whether or not the transaction is thereafter consummated. *Id.; BDB Partnership v. Rehoboth Realty, Inc.*, 1988 WL 55317 (Del.Super. May 26, 1988). By the time the bankruptcy petition was filed in this case, the agreement of sale was already signed by both parties. The professionals had thus already earned their commissions by procuring a ready, willing and able buyer. The sole remaining obligation of the debtor to pay the commissions cannot be regarded as calling for any further performance on the part of the

---

**8.** The Bankruptcy Court's order approved the agreement of sale as a whole without explicitly analyzing whether the fee addendum was a separate, executory contract.

professionals such that the addendum could be considered executory. *See In re Moskovic*, 77 B.R. 421, 423 (Bankr.S.D.N.Y. 1987). The commissions addendum is therefore not an executory contract and is not assumable by the debtor-in-possession. *See In re Munple, Ltd.*, 868 F.2d 1129, 1130 (9th Cir.1989); *In re Moskovic*, 77 B.R. 421, 423 (Bankr.S.D.N.Y.1987); *In re Murtishi*, 55 B.R. 564, 569 (Bankr.N.D.Ill. 1985) (exclusive listing agreement was not executory when petition was filed; "[i]t is well established that where all the elements of performance have been accomplished leaving only an obligation to pay money, the contract is not executory within the meaning of the statute"); *In re Gardinier*, 50 B.R. 491, 494 (Bankr.M.D.Fla. 1985).[9,10]

The bankruptcy court thus erred in approving the assumption of the commissions addendum to the land sale contract. The court failed to examine the question of whether the addendum formed a separate, executory contract assumable by the debtor. The portion of the court's order approving the assumption of the commissions addendum is thus reversed.[11]

9. Several courts have qualified the Countryman definition by holding that a contract in which a duty to perform remains only on one side may still be executory if assumption would benefit the estate and its creditors. *In re Arrow Air, Inc.*, 60 B.R. 117, 122 (Bankr.S.D.Fla.1986); *see In re Detra Fox*, 83 B.R. 290, 299 (Bankr.E.D.Pa. 1988). However, even were this the applicable law, the court finds no benefit to the estate that would make the agreement assumable. The professionals have performed their duties under the agreement; assuming the agreement means that the debtor would have an obligation to pay money without being entitled to receive anything in return. The debtor contends, however, that the estate will be benefited by assuming the commissions addendum because Indian River Land Company plans to lend part or all of its fee to the debtor. Appendix to Answering Brief at Exhibit G (Examination of Carlton Moore at 39, 40). In addition, the debtor claims that nonpayment of the commissions would destroy the enthusiasm of the realtor's sales force towards selling other projects of the debtor. *Id.* (Examination of Carlton Moore at 45). The court believes that a potential loan and a possible lack of enthusiasm among the sales force are too speculative to allow for assumption of the agreement despite its non-executory nature.

10. Any post-contract, post-petition work done by the professionals in connection with the Gull

## NUNC PRO TUNC APPROVAL

■ In addition to assuming the contractual commissions, the Bankruptcy Court approved the employment of the professionals *nunc pro tunc* to the date of the petition, for the purposes of the Gull Point sale only.[12] Section 327(a) of the Bankruptcy Code provides that the trustee, with the court's approval, may employ one or more attorneys or other professional persons to assist the trustee, as long as the professionals do not hold interests adverse to the estate and are disinterested persons. 11 U.S.C.A. § 327(a) (West 1979).[13] Prior court approval is generally required in order to employ a professional person. *See In re Arkansas Co.*, 798 F.2d 645, 649 (3d Cir.1986). However, a bankruptcy court may grant retroactive approval of professional employment if extraordinary circumstances are present. *Id.* at 646. The bankruptcy court must apply a two-part test to determine the propriety of retroactive approval of professional employment. First, the bankruptcy court must find that the professional satisfies the disinterestedness requirements of § 327(a), and thus would

Point sale would not render the fee agreement executory. Since the professionals were not required to perform any such work in order to earn their commissions, the agreement would remain non-executory. *See In re Munple, Ltd.*, 868 F.2d 1129, 1131 (9th Cir.1989).

11. Since the commissions addendum was not assumable, the professionals do not have administrative expense priority but rather are pre-petition creditors holding general unsecured claims against the estate. *In re Moskovic*, 77 B.R. 421, 423 (Bankr.S.D.N.Y.1987); *see In re Coast Trading Co.*, 744 F.2d 686, 692 (9th Cir.1984) (obligations arising from an executory contract assumed by the debtor are treated as administrative expenses).

12. The commissions addendum could not be approved by the court *nunc pro tunc* because the bankruptcy court's jurisdiction of the case began on the date of the petition, after the fees were already earned. *See In re Moskovic*, 77 B.R. 421, 423 (Bankr.S.D.N.Y.1987).

13. Bankruptcy courts routinely hold that real estate brokers are professional persons for purposes of § 327(a). *In re Channel 2 Associates*, 88 B.R. 351, 352 (Bankr.D.N.M.1988).

have been appointed initially. *F/S Airlease II, Inc. v. Simon,* 844 F.2d 99, 105 (3d Cir.); *cert. denied,* — U.S. —, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). Second, the court must determine whether there are extraordinary circumstances present that would warrant retroactive approval. *Id.* A decision to grant *nunc pro tunc* approval is in the discretion of the Bankruptcy Court, and is reviewed for abuse of discretion only. *Id.* at 103.

■ The court finds that, under the facts of this case, the bankruptcy court did not abuse its discretion in approving the employment of the professionals *nunc pro tunc* for purposes of the Gull Point sale. The employment of the professionals for purposes of that sale was for only a short time period, since the closing was scheduled to occur about two weeks after the bankruptcy petition was filed. In addition, the closing was scheduled to occur the day after the hearing in the Bankruptcy Court, and thus the bankruptcy judge understandably wanted to allow for consummation of the sale. The court believes that these factors weigh in favor of liberally construing compliance with the requirements for professional employment.

The first requirement for *nunc pro tunc* approval is that the professionals satisfy the disinterestedness requirements of § 327(a). *F/S Airlease II, Inc. v. Simon,* 844 F.2d 99, 105 (3d Cir.); *cert. denied,* —

U.S. —, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). That is, the professionals must be disinterested and must hold no interests adverse to the estate. *In re Arkansas Co.,* 798 F.2d 645, 650 (3d Cir.1986). As to disinterestedness, the professionals probably are not disinterested under a strict reading of § 327(a)[14]. However, several courts have held that the disinterestedness requirement is less stringent when the professional is appointed by a debtor-in-possession rather than by a trustee. *See In re Best Western Heritage Inn Partnership,* 79 B.R. 736, 740 (Bankr.E.D.Tenn.1987); *In re Covey,* 57 B.R. 665, 666–67 (Bankr.D.S. Dak.1986). The Bankruptcy Court in *In re Covey* held that an insider under the meaning of the statute was not disqualified from serving as the debtor's attorney. 57 B.R. at 666. The court noted that "[t]he trustee is required to be aloof from all connection with the debtor and its management.... The debtor-in-possession, however, is certainly not aloof from the debtor nor the management of the estate—the debtor-in-possession *is* the debtor...." *Id. Accord In re Best Western Heritage Inn Partnership,* 79 B.R. at 740 ("a disinterested trustee should have a disinterested attorney. It does not follow that a debtor-in-possession should have a disinterested attorney."). The reasoning in *Covey* and *Best Western,* as well as the proximity of the Gull Point sale, support the Bankruptcy Court's decision.[15] In addition to the question of disin-

**14.** Although the Bankruptcy Court made no specific finding of disinterestedness in its order, the transcript of the Bankruptcy Court hearing clearly demonstrates that the judge considered the issue. Appendix to Answering Brief, Exhibit G at 66, 67. Section 101 of the Bankruptcy Code lists several types of persons considered to be "disinterested", including a person who is not an "insider". 11 U.S.C.A. § 101(13) (West 1979). With respect to corporate debtors, "insider" is defined as including an officer of the debtor and a person or corporation in control of the debtor. 11 U.S.C.A. § 101(30)(B) (West Supp. 1989). The record indicates that the realtor, Indian River Land Co., is owned by three people, all of whom are also officers of the debtor. The land company's salesperson who was involved in the Gull Point sale is also an officer of the debtor, and owns about 65 percent of the debtor's shares. As to the law firm, an insider also includes a relative of an officer of the debtor. 11 U.S.C.A. § 101(30)(B) (West Supp.

1989). A "relative" is an individual related by affinity or consanguinity within the third degree as determined by the common law. 11 U.S.C.A. § 101(39) (West Supp.1989). J. Everett Moore, Jr., the law firm's attorney who worked on the Gull Point sale, is a nephew of an officer of the debtor. A nephew is within the third degree of consanguinity. *See In re Covey,* 57 B.R. 665, 666 (Bankr.D.S.Dak.1986).

**15.** In addition, the court believes that the attorney might not even need to meet the disinterestedness requirement. Subsection (e) of § 327 states that the trustee, with the court's approval, may employ "for a specified special purpose", other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if such attorney does not hold an interest adverse to the debtor or the estate. 11 U.S.C.A. § 327(e) (West 1979). Such an attorney need not be disinterested. 2 W. Collier, *Collier on Bankruptcy* ¶ 327.03[6] (15th ed.

terestedness, the professionals arguably have no interest adverse to the estate.[16] Thus the Bankruptcy Court did not abuse its discretion in finding that the professionals met the requirements of § 327(a).

The second requirement for *nunc pro tunc* approval is that extraordinary circumstances must be present. *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 105 (3d Cir.); *cert. denied,* —— U.S. ——, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). The court believes that extraordinary circumstances were present in this case. One factor to consider in evaluating whether extraordinary circumstances exist is whether the professional was under time pressure to begin service without court approval. *Id.* at 105–06 (citing *In re Arkansas Co.*, 798 F.2d 645, 650 (3d Cir.1986)). The professionals in this case were under time pressure to bring the sale to closing since the closing was scheduled to occur on April 14, only two weeks after the bankruptcy petition was filed.[17] In addition, the court believes that the requirement of extraordinary circumstances should be relaxed when, as here, the application for approval of fees contained in the real estate contract was made only a few days after the bankruptcy petition was filed.[18] This court therefore finds that the Bankruptcy Court did not abuse its discretion in approving the employment of the professionals *nunc pro tunc.*

Since the Bankruptcy Court approved both the pre-petition and post-petition services of the professionals, it did not deter-mine the value of the services, if any, rendered on the Gull Point sale post-petition. The court hereby vacates the awards of professional fees and remands this case to the Bankruptcy Court so that it may determine, pursuant to 11 U.S.C. § 330(a) [19], the value of any actual, necessary services rendered by the professionals on the Gull Point sale post-petition. The court notes that professional fees can be awarded only when the Bankruptcy Court has a specific analysis of every task for which compensation is sought. *See* Bankr.R. 2016(a) (West Supp.1989) (an entity seeking compensation for services and expenses shall provide a detailed statement of the services rendered, time expended, and expenses incurred); *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 832 (Bankr.D.Vt.1987); *In re Nation/Ruskin, Inc.*, 22 B.R. 207, 210 (Bankr.E.D.Pa. 1982) (lumping together services is not acceptable).

### CONCLUSION

The court hereby reverses that portion of the Bankruptcy Court's order which approves the assumption of 'the commissions addendum to the agreement of sale. The court affirms the Bankruptcy Court's approval of the professionals' employment *nunc pro tunc* to the date of the petition, for purposes of the Gull Point sale. The court vacates the awards of professional fees and remands the case for the Bankruptcy Court's determination of a reasonable amount of compensation based on the services rendered by the professionals post-

---

1989). At least one court has held that § 327(e) applies to a situation where an attorney seeks approval of employment for the purpose of assisting the debtor in consummating the sale of debtor's real property. *In re D.L. Enterprises,* 89 B.R. 107, 109–10 (Bankr.C.D.Cal.1988).

**16.** The professionals are pre-petition creditors of the estate because of the Gull Point commissions. However, courts disagree as to whether such an interest disqualifies a professional under § 327(a). *See In re Heatron, Inc.,* 5 B.R. 703, 705 (Bankr.W.D.Mo.1980) (an attorney who is a major creditor does not have an adverse interest); *contra In re Gray,* 64 B.R. 505, 507 (Bankr.E.D.Mich.1986) (law firm that is pre-petition creditor has adverse interest).

**17.** In fact, the purchasers had extended the contract only until April 15.

**18.** For example, in the Third Circuit case which held that bankruptcy courts may grant retroactive approval of professional employment if extraordinary circumstances exist, the law firm had rendered legal services for 13 months before discovering that it had failed to obtain the requisite court approval. *In re Arkansas Co.,* 798 F.2d 645, 646 (3d Cir.1986).

**19.** Section 330(a) provides that the court may award to a professional person employed under § 327 reimbursement for actual, necessary expenses and reasonable compensation for any actual, necessary services rendered, based on the nature, extent, and value of the services; the time spent by the professional; and the cost of comparable services other than in a case under this title. 11 U.S.C.A. § 330(a) (West Supp. 1989).

petition in connection with the Gull Point sale.

An Order will issue in accordance with this Opinion.