**In re LIVING HOPE SOUTHEAST, LLC.**

**No. 4:12–bk–11082 E.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Aug. 6, 2012.

---

Jim Smith, Chip Welch, for Debtor.

Judy Henry, for Pinewood.

### ORDER APPROVING IN PART APPLICATION TO EMPLOY ATTORNEY

AUDREY R. EVANS, Bankruptcy Judge.

Now before the Court is the *Application to Employ Attorney* (the "**Application**") filed by the Debtor-in-possession seeking to hire the law firm of Smith Akins, P.A. and the firm of Welch, Brewer and Hudson, LLC as counsel for the Debtor in this

bankruptcy proceeding. This application was filed June 13, 2012, and creditor Pinewood Enterprises, LC ("**Pinewood**") filed an objection on June 19, 2012. The Court held a hearing on this matter July 26–27, 2012. The Debtor appeared through James E. "Jim" Smith, Morgan "Chip" Welch and Ashley Welch Hudson. Judy Henry and Diana Synder appeared on behalf of Pinewood. Following testimony and the submission of documentary evidence, the Court took the matter under advisement.

After careful thought and review of the evidence before it, and for the reasons set forth in more detail below, the Court finds that applicants Chip Welch and Ashley Hudson are disinterested and neither hold nor represent an adverse interest to the Debtor's estate as required by 11 U.S.C. § 327(a), and accordingly, are hired to represent this estate. As to applicant Jim Smith, the Application is under advisement to allow the Court more time to review certain transfers and distributions made by the Debtor to or on behalf of its owner, the AK Trust, or its beneficiaries, Kimbro and Alice Stephens.[1] Finally, with no explanation provided for the tardy filing of the Application either in the Application or at hearing, the Court cannot approve the hiring of counsel *nunc pro tunc* to the date of the bankruptcy filing.[2]

---

1. The Court enters this abbreviated order now because at the close of the hearing, it said it would enter an order promptly, and the Debtor needs to know if it has representation. Although the Court believes there may be compelling reasons to hire Smith despite a *potential* conflict of interest, the Court needs additional time to more thoroughly examine this case and explain its ruling in a detailed opinion.

2. Some courts do not allow *nunc pro tunc* approval of applications to hire; others take a more flexible approach and allow it under limited circumstances. *See In re NWFX, Inc.,* 267 B.R. 118 (Bankr.W.D.Ark.2001) ("Recog-

nizing the bankruptcy courts' equitable powers, the Eighth Circuit Court of Appeals stated that, 'in limited circumstances, the bankruptcy court as a matter of fundamental fairness may exercise its discretion and enter a *nunc pro tunc* order authorizing compensation.'") (quoting *Lavender v. Wood Law Firm,* 785 F.2d 247, 248–49 (8th Cir.1986)). Factors to be considered by the Court in exercising its discretion to determine whether to grant a *nunc pro tunc* employment order include:

whether the professional or some other person bore responsibility for applying for approval, whether professional services were provided on an emergency basis, whether

Although the Court routinely grants applications to hire *nunc pro tunc*, it does so only when there are no objections and the cause for delay is adequately explained.

Pinewood objects to the Application on numerous grounds including assertions that the applicants are not qualified and are charging unreasonable hourly rates. The Court finds, without hesitation, that the applicants are qualified to represent the Debtor.[3] Smith and the members of his firm routinely represent chapter 11 debtors in complex cases. Smith testified that the Debtor seeks to hire Welch and Hudson, experienced trial litigators, to assist the Debtor with the ongoing litigation that has forced it into bankruptcy, and because that litigation "permeates" the entire case, Welch seeks to be hired as estate counsel and not as special counsel. Welch's performance during the hearing evidenced his capacity to perform professionally in any courtroom and no matter what the subject. The Debtor called Thomas Streetman as an expert on the

issue of the reasonableness of the applicants' proposed fees, and he testified that the fees were more than reasonable given the complexity of this case. The Court is satisfied that the proposed hourly rates are reasonable in light of the complexity of this case. In addition, the reasonableness of all charges will be further reviewed by the Court upon an application for compensation.

The more difficult question presented in this case is whether the applicants meet the qualifications for representing a Chapter 11 Debtor under 11 U.S.C. § 327. Subject to court approval, a debtor-in-possession (because it generally holds the same rights as a trustee) may employ counsel to represent it in carrying out its duties under the Bankruptcy Code. Specifically, § 327(a) provides, in part: "... the trustee, with the court's approval, may employ one or more attorneys, ... or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to rep-

---

the duration of the professional services was a short time period, whether the professional was under time pressure to begin service without approval, the amount of delay after the professional learned that initial approval had not been granted, the extent to which the payment of compensation to the professional will prejudice innocent third parties, and other relevant factors. 9 Am.Jur.2d Bankruptcy § 204 (citing *In re Jarvis*, 53 F.3d 416 (1st Cir.1995); *In re Atkins*, 69 F.3d 970 (9th Cir.1995); *Matter of Arkansas Co., Inc.*, 798 F.2d 645 (3d Cir. 1986); *Indian River Homes, Inc. v. Sussex Trust Co.*, 108 B.R. 46 (D.Del.1989); *In re Garden Ridge Corp.*, 326 B.R. 278 (Bankr. D.Del.2005); *In re Fleming Companies, Inc.*, 305 B.R. 389 (Bankr.D.Del.2004); *Matter of Timberline Property Development, Inc.*, 115 B.R. 787 (Bankr.D.N.J.1990); *Matter of Saybrook Mfg. Co., Inc.*, 108 B.R. 366 (Bankr. M.D.Ga.1989)). *See also* 133 A.L.R. Fed. 465 ("The majority of jurisdictions require that a professional person presenting an application for an order authorizing and approving the

employment of the applicant by a bankruptcy estate retroactively to the date the applicant began rendering services to the estate show 'extraordinary circumstances' to gain approval of the application.").

3. The Debtor filed its bankruptcy petition under Chapter 11 on February 27, 2012. The Debtor, Living Hope Southeast, LLC, operates an outpatient facility in Little Rock. The Debtor, certain related entities, trusts, and individuals share a long and litigious history with creditor Pinewood and the Chapter 7 Trustee of a related entity in bankruptcy. On January 11, 2012, U.S. District Court Judge P.K. Holmes, III entered a Memorandum Opinion and Order in an appeal of a decision in the Living Hope Southwest Medical Services, LLC bankruptcy (4:06–bk–71484) which has been ongoing in the Texarkana division of the Bankruptcy Court since 2006. In that Memorandum Opinion, which is available on Westlaw at 2012 WL 79661, Judge Holmes described the history of the parties and proceedings.

resent or assist the trustee in carrying out the trustee's duties under this title." A "disinterested person" is defined in 11 U.S.C. § 101(14) as a person that

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

In this case, there is no allegation that any of the applicants, as individuals, hold an adverse interest to the Debtor. Fur-

ther, none of the applicants have an identifiable conflict; they do not represent any other creditors, insiders or parties-in-interest.[4] Pinewood, however, maintains that the applicants actually represent insiders who may have an adverse interest to the Debtor such as the AK Trust (which owns 99% of the Debtor's membership interests) and Alice and Kimbro Stephens who are beneficiaries of the AK Trust and who are liable to Renee Williams, Chapter 7 Trustee, for a settlement reached in the Living Hope Southwest case (the "**LHSW Settlement**").[5]

The Court agrees that regular monthly distributions from the Debtor to its 99% owner, the AK Trust, as well as the payments made on the LHSW Settlement are questionable and raise *potential* conflicts of interest.[6] The Court is not prepared, at

---

4. Applicant Chip Welch disclosed at the hearing that he previously represented one relative of the Stephenses in an unrelated matter in the 1980s.

5. The Debtor's members are: the Kimbro Stephens Insurance Trust who owns a 1% membership interest; the A.K. Tennessee Irrevocable Trust which owns up to a 99% membership interest; and the A.K. Tennessee Irrevocable Residuary Trust which *may* own some membership interest (hereinafter both trusts will collectively be referred to as the "**A.K. Trust**"). Robert Williams is the Trustee of both the A.K. Trusts, and holds voting control of 99% of the Debtor. The beneficiaries of the A.K. Trust are Kimbro Stephens and Alice Stephens.

6. Pinewood's other reasons for opposing Smith's employment are rejected. Specifically, as a potential conflict of interest, Pinewood alludes to a potential claim by this Debtor's estate for mismanagement. As evidence of such a claim, Pinewood points to statements made by Judge James G. Mixon following a hearing on the approval of the settlement between the Trustee and various parties in the Living Hope Southwest bankruptcy case. In stating why he was approving the settlement, Judge Mixon stated:

there is evidence, and Ms. Henry's proven substantial evidence of breach of fiduciary duty by Mr. and Ms. Stephens, particularly Mr. Stephens and by Mr. Grundy and others, and that they just absolutely forfeited their fiduciary duty to this debtor, took these business opportunities and transferred them over to this new entity they created—that—there's lots of evidence of that. Probably, the evidence will sustain a finding of fraud on behalf of Mr. and Ms. Stephens and Mr. Grundy and others. Certainly there'd be a case for civil conspiracy involving those same people and others.

This statement shows that there was evidence produced in another proceeding that certain individuals who have an interest in the Debtor may have committed some bad acts or even mismanaged the Debtor's predecessor, Living Hope Southwest. The statement does not show that the Debtor in this case—Living Hope Southeast—has been mismanaged or that it would have a claim for mismanagement against these individuals.

Additionally, Pinewood contends that Applicant Smith held himself out as a member of the Debtor when signing a bank form (a Limited Liability Company Banking Resolution) establishing the "LHSE LLC Escrow Account" on March 16, 2009, and that this creates a disqualifying conflict of interest.

this time, to find that Smith represented those entities, or that his representation of LHSE in those transactions create an *actual* conflict of interest. *See, e.g., In re Marvel Entertainment Group, Inc.,* 140 F.3d 463, 476–477 (3rd Cir.1998) (regarding actual versus potential conflicts of interest and disqualification of counsel). The Court needs additional time to study the applicable law and the evidence in this case and reach a decision; accordingly, the Application as it relates to Smith and his law firm is under advisement.

■ With respect to applicants Welch and Hudson, Pinewood complains that the Application and accompanying affidavit do not disclose that one of the A.K. Trusts paid $12,500 of the retainer paid to Welch. Welch, however, submitted the engagement letter with the Debtor, which made clear he and his firm would only be representing the Debtor, and no other parties. The Court does not believe the payment of an obligation of the Debtor by one of Debtor's owners creates an adverse interest on the part of the counsel receiving the payment, or that such payment prevents counsel from being disinterested. The Court finds that Welch does not represent the A.K. Trust based on this one payment of Welch's retainer, and accordingly, Welch is not disqualified even if it were ultimately determined that A.K. Trust holds an adverse interest to the Debtor.[7] Accordingly, the Court approves the Application as to applicants Welch and Hudson and their employment is approved as of the date of that application, but the Application is not approved *nunc pro tunc* to the date of Debtor's bankruptcy filing.

For these reasons, it is hereby

**ORDERED** that the Application to Employ is **UNDER ADVISEMENT** as to Jim Smith and Smith Akins, P.A., and **APPROVED** as to Chip Welch and Ashley Hudson who are hired as counsel for the Debtor as of June 13, 2012.

**IT IS SO ORDERED.**

---

Smith testified he did not prepare the form; the Bank filled in the form and he merely signed it. Where the managers, members and authorized signers are listed, he was listed as a member but not a manager. The signature line listed his title as "Attorney of LHSE LLC." There was no evidence Smith holds a membership interest in the Debtor or that he ever held himself out as owning an interest in the Debtor, other than this form. The Court does not find this evidence indicates that Smith is not disinterested or holds an interest that is adverse to the Debtor.

7. Welch also discloses in his engagement letter that he previously consulted with Kimbro Stephens but was not hired by him. The Court does not find this to be a conflict.