In re GODWIN BEVERS CO.,
INC., Debtor.

COLDWELL BANKER AND COMPANY,
Plaintiff-Appellant,

v.

GODWIN BEVERS CO., INC., Defendant-
Appellee and Debtor in Possession.

No. 76–1901.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 23, 1978.

Decided May 3, 1978.

Rehearing Denied June 13, 1978.

Eugene F. Costello, Denver, Colo. (Tom B. Markley, San Jose, Cal., with him on briefs), for plaintiff-appellant.

Michael A. Berniger, Colorado Springs, Colo. (David J. Clarke, Denver, Colo., with him on brief), for defendant-appellee and debtor in possession.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In this bankruptcy proceeding the district court held that the claim of Coldwell Banker and Company, plaintiff-appellant, should be allowed as a general, unsecured claim. Coldwell Banker asserts that its claim should be allowed and paid as an expense of administration. We affirm the district court.

After an involuntary petition in bankruptcy had been filed against it, defendant-appellee Godwin Bevers Co., Inc., petitioned for a plan of arrangement under Chap. XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq. Coldwell Banker, claimant, filed its "Proof and Statement of Claim" which was referred to a bankruptcy judge. After hearings, he made extensive findings, which are not contested, and recommended that the claim be allowed as an expense of administration. With one exception, not pertinent here, the district court adopted the findings of fact made by the bankruptcy judge. The district court held that the claimant held a debt which was contingent and unliquidated and was payable as a general, unsecured obligation of the bankrupt.

On September 1, 1972, the bankrupt signed, and the claimant accepted, a listing agreement pertaining to the sale of certain Color Tile stores. In pertinent part the listing agreement provided:

"In the event a sale or exchange of said property is consummated upon terms satisfactory to the undersigned [bankrupt], and involving a purchaser who has been procured by Coldwell, Banker & Company, I [bankrupt] hereby agree to pay Coldwell, Banker & Company upon consummation of such sale a real estate commission of 4% of the total accepted sales price. I [bankrupt] further agree to honor your position in any transaction involving a purchaser who has been originated by you and whose name has been previously submitted to me in writing."

On October 25, 1972, bankrupt entered into a "Purchase Agreement and Escrow Instructions" with a buyer produced by claimant. The total price was $1,745,329. Pursuant to the purchase agreement, buyer paid seller $146,285 in installments. An additional $247,794 was due on the closing of the escrow. The balance was to be covered by buyer's assumption of "permanent loans." The purchase agreement stated that the bankrupt would pay the claimant 4% of the total price as a commission for services rendered with $25,000 "payable upon release from escrow of Buyer's deposit monies" and the balance on close of escrow of each of the individual properties. Claimant received the $25,000. About January 24, 1973, debtor executed deeds and assignments of leases conveying interests in 12 Color Tile stores. The deeds were recorded before the institution of the bankruptcy proceedings. The buyer rejected a thirteenth store.

Because of bankrupt's financial trouble, in February, 1973, the purchase agreement was modified by a financing agreement which related to the completion of construction of some of the stores and which is not material to the issues here presented. On May 9, 1973, an involuntary petition in bankruptcy was filed against debtor and on May 14 it petitioned for a plan of arrangement under Chap. XI. Problems relating to the marketability of title to some of the properties were submitted to the bankruptcy court and apparently solved. The parties stipulated that bankrupt received from the escrow not less than $43,000 after May 9. The bankruptcy judge held that $39,-008.12 was due from the debtor to the

claimant and was unpaid. The amount is not disputed.

Several months before the bankruptcy proceedings, the claimant had fully performed its obligations under the listing agreement. It had produced a buyer acceptable to bankrupt. Sales of some of the properties were not completed until after bankruptcy. Claimant contends that because completion occurred after bankruptcy, the listing agreement was an executory contract under California law and was not a provable claim at the time of bankruptcy. The theory is that after bankruptcy the contract was implicitly affirmed and, accordingly, the amounts due claimant must be borne as costs of administration.

■ Claimant asserts that, because the escrow agreement was made and performed in California, the law of that state governs. It may be that under California law the contract between claimant and bankrupt was executory. Property rights are regulated by state law but "when the language of Congress indicates a policy requiring a broader construction of the [bankruptcy] statute than the state decisions would give it, federal courts cannot be concluded by them." *Chicago Board of Trade v. Johnson,* 264 U.S. 1, 10, 44 S.Ct. 232, 234, 68 L.Ed. 533. The recognized rule is that Federal bankruptcy law, not state law, governs the distribution of bankrupt's assets to his creditors. *America Surety Co. v. Sampsell,* 327 U.S. 269, 272, 66 S.Ct. 571, 90 L.Ed. 663. See also *Vanston Committee v. Green,* 329 U.S. 156, 163, 67 S.Ct. 237, 91 L.Ed. 162; and Hill, Erie Doctrine in Bankruptcy, 66 Harvard L.Rev. 1013, 1048–1049.

■ Although Chap. XI, see 11 U.S.C. §§ 713 and 757, gives a trustee the power to accept or reject an executory contract, the use of that power does not transform a contract fully performed by the nonbankrupt into an expense of administration. We find nothing in the record to show whether the trustee of the bankrupt explicitly accepted or rejected the contract with claimant. By acceptance of the proceeds from the escrow, he implicitly accepted the contract. When the trustee accepts, he takes the burdens with the benefits. Countryman, Executory Contracts in Bankruptcy, 57 Minn.L.Rev. 439, 456–457. Implicit acceptance of the benefits of a contract fully performed by the nonbankrupt neither adds to, nor detracts from, the nonbankrupt's claim or the estate's liability. Ibid. at 451 and 457. Acceptance by itself does not convert the claim into an administration expense to the prejudice of the creditors of the bankruptcy estate. Ibid. at 450–451.

■ The controlling question is whether the nonbankrupt has a provable claim in the bankruptcy proceedings. Ibid. at 451. See also *In re Kosting,* D.C.Conn., 350 F.Supp. 1071, 1073–1074, and *In re Forney,* 7 Cir., 299 F.2d 503, 506–507. Debts of a bankrupt which may be proved and allowed against his estate include "contingent debts and contingent contractual liabilities." 11 U.S.C. § 103(a)(8). A contingent claim must be "liquidated or the amount thereof estimated in the manner and within the time directed by the court." 11 U.S.C. § 93(d). The term "contingent debts" covers "all debts that, either as to their existence or as to their amount, depend on some event uncertain either as to its occurrence altogether, or to the time of its occurrence." Collier on Bankruptcy, 14th ed., ¶ 63.30, pp. 1912–1913. In the case at bar the claimant had performed long before bankruptcy and only payment remained. Time of payment was contingent upon completion of the sales and the amount was determined by the sale prices. The contingency was met, and the amount became liquidated, during the course of the bankruptcy proceedings.

■ Claimant makes an obscure argument that it is entitled to recover its debt as an administrative expense because it was a third party beneficiary of the purchase and escrow agreement made by bankrupt with the buyer of the stores and that the agreement was not consummated until after bankruptcy. We doubt if the point is properly before us, but if it is, the status of claimant's debt as a provable contingent liability is not affected. During the proceedings, the contingency was met and the

obligation liquidated. The district court correctly held that the claim was payable as a general, unsecured obligation of the bankrupt.

Affirmed.