MT. WHEELER POWER, INC., A NEVADA CORPORATION, APPELLANT, v. THOMAS G. GALLAGHER, DOROTHY S. GALLAGHER, GORDON W. GARRETT, CHRISTINE GARRETT, AND PRODUCERS LIVESTOCK LOAN COMPANY, RESPONDENTS.

No. 13073

November 30, 1982                      653 P.2d 1212

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

[3]The Governor designated the Honorable Michael E. Fondi, District Judge, of the First Judicial District Court, to sit in the place of THE HONORABLE CHARLES E. SPRINGER, who voluntarily disqualified himself. Nev. Const., art. 6, § 4.

*Vaughan, Hull & Copenhaver, Ltd.,* Elko, for Appellant.

*Evans & Bilyeu,* and *Ross P. Eardley,* Elko, for Respondents.

## OPINION

*Per Curiam:*

In October of 1971 appellant, Mt. Wheeler Power, Inc. (Wheeler Power), entered into a series of contracts with the predecessor of the Diamond Land and Cattle Company (Diamond), a general partnership comprised of respondents Thomas and Dorothy Gallagher and Gordon and Christine Garrett. The agreements were binding upon Diamond as a successor in interest. Diamond also executed certain contracts of the same type directly with Wheeler Power. Pursuant to the terms of the contracts, Wheeler Power was to supply Diamond with the electricity it required in its farming operations. In return, Diamond agreed to pay for such service. After several years of operation, Diamond filed a petition in the Federal Bankruptcy Court pursuant to Chapter XII of the Bankruptcy Act.[1] As part of its reorganization plan, Diamond was to continue its farming operation, and did so as a debtor-in-possession. At the time, Diamond's property was encumbered by deeds of trust and chattel mortgages held by respondent Producers Livestock Loan Company (Producers). Commencing in April, 1978, and continuing throughout the nearly six month period of Diamond's operation as a debtor-in-possession, Wheeler Power supplied electricity to the farm. It is for this service that Wheeler Power now seeks recovery.

While operating under the supervision of the bankruptcy court, Diamond filed a motion to convert the Chapter proceeding into a straight bankruptcy. The bankruptcy court granted the request and entered its adjudication of bankruptcy. Producers then reclaimed the farm, which had been security for Diamond's indebtedness, subject only to the payment by Producers of a third party claim that had been given priority status as an expense of administration. Unfortunately, no allowance was made to compensate Wheeler Power for its service. Wheeler Power did not file a claim for administrative expense in the bankruptcy court and Diamond overlooked securing payment for the power service prior to the reclamation of the farm by Producers. The bankruptcy court subsequently issued

---

[1]This case is governed by the "old" Bankruptcy Act 11 U.S.C. § 1 *et seq.* (repealed 1978).

an order closing bankruptcy. Producers then lawfully proceeded with a sale of the enterprise for an amount somewhat less than the indebtedness owed by Diamond.

Several months later Diamond sought to reopen the bankruptcy proceeding in order to recover from Producers the amounts owing for the electrical service. The bankruptcy court denied Diamond's application for payment to Wheeler Power holding that it no longer had jurisdiction over the property. There was no appeal of the decision of the bankruptcy court. Instead, Wheeler Power filed a separate suit in the state district court against the general partners of Diamond seeking to recover for the power service. In denying relief the district court held the indebtedness was not incurred by the general partners, but by the debtor-in-possession who was subject to the control and jurisdiction of the bankruptcy court. The district court then determined that Wheeler Power could not recover as it failed to perfect its claim in the appropriate forum. For the reasons hereinafter specified, we must reverse.

Since the electrical service provided to the debtor-in-possession was unquestionably an expense of administration, as noted by both the bankruptcy court and court below, it could and undoubtedly should have been included for payment by Producers prior to the closure of the bankruptcy. The fact that it was not however, does not defeat Wheeler Power's claim against the nonbankrupt general partners of Diamond.

At the time of the filing of the Chapter XII proceeding, it is clear that the contracts between Wheeler Power and Diamond were executory in nature. The former was committed to continue providing electric power and the latter was obligated to pay for such power. After the Chapter filing, the debtor-in-possession had the responsibility to either accept or reject these executory contracts with Wheeler Power. Unless expressly rejected, the agreements remained in effect. Federal's, Inc. v. Edmonton Investment Company, 404 F.Supp. 68 (E.D.Mich. 1975); In re Shoppers Paradise, Inc., 8 B.R. 271 (Bankr.S.D.N.Y. 1980).[2] In any event, where, as here, the debtor-in-possession accepted continued performance by Wheeler Power, there was an implied assumption of the executory contracts. Under such circumstances, the debtor-in-

[2]Under bankruptcy law, there is no essential difference between a debtor-in-possession and a trustee in bankruptcy. In re Trigg, 630 F.2d 1370 (10th Cir. 1980).

possession assumed both the benefits and the obligations of these contracts. In re Godwin Bevers Co., Inc., 575 F.2d 805 (10th Cir. 1978); In re Trigg, 630 F.2d 1370 (10th Cir. 1980). Matter of Steelship Corp., 576 F.2d 128 (8th Cir. 1978). Further, since at the time of the filing of the Chapter XII, the contracts were to be performed in futuro, Wheeler Power had no basis for filing a creditor's claim and the obligation for initiating and completing the process for accomplishing payment of the power charges belonged to the debtor-in-possession. Consolidated Gas Elec. L. & P. Co. v. United Rys. & Elec. Co., 85 F.2d 799 (4th Cir. 1936); Federal's, Inc. v. Edmonton Investment Company, *supra*. When Diamond elected to convert the Chapter proceeding into a straight bankruptcy, the intervention of the bankruptcy constituted a breach of the executory agreements, thus giving rise to a provable claim. Consolidated Gas Elec. L. & P. Co. v. United Rys. & Elec. Co., *supra*. Unfortunately, well in advance of the deadline for filing creditors' claims established by the bankruptcy court the latter court granted Producer's motion to reclaim the only asset in the bankruptcy estate. As a result, when Wheeler Power timely filed its creditor's claim there was nothing left from which satisfaction of the power charges could be obtained.

Under the circumstances recited above, we see no basis for utilizing the legal fiction "separating" the debtor-in-possession from Diamond as a proper rationale for leaving Wheeler Power without remedy. The law does not require that we do so. Under generally accepted contract law, the assumption of a contract by one party does not vitiate the continuing liability of the party from whom the contract rights and obligations are assumed. Commercial Stand. Ins. Co. Of Ft. Worth, Tex. v. Hitson, 388 P.2d 56 (N.M. 1963). It is true that the debtor-in-possession became legally substituted in the place and stead of Diamond. However, such substitution by operation of law did not effectuate a release of the nonbankrupt general partners of Diamond under the executory contracts.[3] In re Tidus, 4 F.2d 558 (D.Del. 1925); Matter of Consolidated Motor Inns, 666 F.2d 189 (5th Cir. 1982). *See also,* 11 U.S.C. § 23(j) (repealed 1978).[4]

---

[3]Under Nevada law, partners are jointly liable for debts and obligations of the partnership. NRS 87.150.

[4]When concerned with a Chapter XII proceeding, the provisions of Chapter XII will control over conflicting provisions found elsewhere in the bankruptcy act. 11 U.S.C. § 802 (repealed 1978). 11 U.S.C. § 23(j)

Equitable considerations are equally compelling in our decision. By its own admission in the petition to reopen the bankruptcy proceedings, the debtor-in-possession was, through inadvertence, responsible for the non-payment of the power bill as an administrative expense. Notwithstanding the separate identities in law of Diamond and the debtor-in-possession, the relationship in fact between the two should have assured responsible consideration of the interests of Wheeler Power. Further, if the debtor-in-possession had properly insisted on payment of the power bill by Producers, the latter would have increased Diamond's indebtedness by the same amount, thereby ultimately placing the burden of payment on the non-bankrupt individual partners of Diamond. Whether Producers would have actually recovered the amount of the power bill from the Diamond partners through a deficiency proceeding or otherwise is a non-issue. The point is, the parties against whom the ultimate right of recapture was at least theoretically available were the individual partners of Diamond. It is therefore most fitting and equitable, as between Wheeler Power and respondents, that the latter absorb the cost of the electrical power in question.

We accordingly reverse the judgment of the district court and remand for further proceedings not inconsistent with this opinion.

(repealed 1978), specifically has been held not to conflict with the provisions of Chapter XII. *See* Consolidated Motor Inns v. BVA Corp., 666 F.2d 189 (5th Cir. 1982); Acme Tool, Inc. v. Flesher, 309 F.2d 636 (10th Cir. 1962).