**In re The CHARTER COMPANY, et al., Debtors.**

**Bankruptcy Nos. 84–289–BK–GP to 84–332–BK–GP.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Sept. 6, 1985.

John T. Ducker, Dayton, Ohio, for Friedman-Fogel.

Russell D. Castleberry, Jacksonville, Fla., for Charter.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

### Introduction

The movant, Robert N. Friedman, Friedman-Fogel, Inc. ("Friedman-Fogel"), filed its Motion for Approval of Assumption of Executory Contract, Appointment of Professional Person and Payment of Administrative Expense (the "Motion") on June 7, 1985. The Debtor, Dayton Press, Inc. ("Dayton"), filed a response to the Motion on August 14, 1985 (the "Response").

In the Motion, Friedman-Fogel:

(i) asserted that letters dated July 28, 1983, and January 24, 1984, pursuant to which Friedman-Fogel was retained as a broker (the "Brokerage Agreements") in the sale of Dayton's plant (the "Plant") were executory contracts as of April 20, 1984, the date on which Dayton filed its chapter 11 peti-

tion (the "Filing Date") and requested the Court to direct Dayton to assume the Brokerage Agreements pursuant to § 365 of the Bankruptcy Code (the "Code");

(ii) requested the Court to approve the employment of Friedman-Fogel as a professional pursuant to § 327 of the Code; and

(iii) requested the Court to require Dayton to pay Friedman-Fogel's $150,-000 broker's commission (the "Commission") as an administrative expense.

In the Response, Dayton asserted that:

(i) the Brokerage Agreements were not executory as of the Filing Date and were, therefore, incapable of being assumed or rejected pursuant to § 365 of the Code;

(ii) if the Brokerage Agreements were determined to be executory as of the Filing Date, Dayton elected to reject the Brokerage Agreements;

(iii) Dayton did not desire to employ Friedman-Fogel as a professional pursuant to § 327 of the Code;

(iv) the claim to the Commission was a general unsecured claim not entitled to administrative priority pursuant to § 503 of the Code.

The hearing on the Motion was held on August 23, 1985. Robert N. Friedman testified on behalf of Friedman-Fogel. Charles A. Kelley testified on behalf of Dayton. The Court, having considered the evidence and arguments of counsel, makes the following findings of fact and conclusions of law.

### Findings of Fact

1. On July 28, 1983, Dayton retained Friedman-Fogel to act as broker in the sale of the Plant. Movant's Exhibit 1.

2. On January 24, 1984, Dayton confirmed Friedman-Fogel's employment as broker in the sale of the Plant. Movant's Exhibit 2.

3. On January 24, 1984, Dayton and Gemetal, Inc. ("Gemetal") entered into an Agreement for Purchase and Sale pursuant to which Gemetal would purchase the Plant from Dayton (the "January Agreement"). Debtors' Exhibit 1.

4. Gemetal was ready, willing and able to purchase the Plant on terms acceptable to Dayton pursuant to the January Agreement. Friedman-Fogel was, therefore, the procuring cause of the January Agreement between Dayton and Gemetal.

5. Subsequent to the Filing Date, Dayton and Gemetal terminated the January Agreement; Dayton and Gemetal, however, continued to negotiate and entered into a Purchase and Sale Agreement dated June 28, 1984 (the "June Agreement") pursuant to which Gemetal would purchase the Plant from Dayton. Debtor's Exhibit 2.

6. On July 23, 1984, this Court denied Dayton's motion for authority to sell the Plant to Gemetal pursuant to the June 28 Agreement.

7. Subsequent to July 23, 1984, Dayton and Gemetal continued to negotiate and Gemetal and East River Savings Bank agreed to waive any claims against Dayton or The Charter Company relating to the sale of the Plant (the "Waiver").

8. On August 17, 1984, this Court authorized Dayton to sell the Plant to Gemetal pursuant to the June Agreement, subject to the Waiver. In November 1984, the sale of the Plant to Gemetal was consummated.

### Conclusions of Law

#### Assumption of the Brokerage Agreements

9. Friedman-Fogel's request that the Court approve the assumption by Dayton of the Brokerage Agreements is governed by § 365 of the Code.

10. Section 365(a) of the Code provides, in pertinent part, that "the trustee, subject to the Court's approval, *may* assume or reject any executory contract or unexpired lease of the debtor." (emphasis added).

11. Through the application of § 1107 of the Code, Dayton, as debtor in posses-

sion, is given the *right* to assume or reject executory contracts.

[1] 12. An executory contract is "a contract under which the obligations of *both* the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." (emphasis added). V. Countryman, *Executory Contracts in Bankruptcy:* Part I, 57 Minn.L.Rev. 439, 460 (1973); *In re J.M. Fields, Inc., et al.,* 22 B.R. 861 (S.D.N.Y. 1982).

■ 13. The Brokerage Agreements, by their terms, imposed no obligations on Friedman-Fogel. Accordingly, the Brokerage Agreements were not executory as of the Filing Date and are incapable of being assumed or rejected by Dayton pursuant to § 365 of the Code.

14. Even assuming that the Brokerage Agreements were executory as of the Filing Date, nothing in § 365 of the Code suggests that Dayton can be forced to assume the Brokerage Agreements. Moreover, Dayton informed the Court at the hearing that the Brokerage Agreements, to the extent that they were executory contracts, were rejected.

15. For the foregoing reasons, the Court must deny that part of the Motion which requests the Court to, in essence, direct Dayton to assume the Brokerage Agreements.

### Appointment of Friedman-Fogel as a Professional

16. Friedman-Fogel's request that it be appointed as a professional is governed by § 327 of the Code.

17. Section 327(a) of the Code provides, in pertinent part, that "... the trustee, with the court's approval, *may* employ one or more ... professional persons ... to represent or assist the trustee." (emphasis added).

18. Through the application of § 1107 of the Code, Dayton, as debtor in posses-

sion, is given the *right* to appoint professional persons.

■ 19. Nothing in § 327 of the Code suggests that Dayton is obligated to employ professional persons, and Dayton informed the Court at the hearing that it did not desire to employ Friedman-Fogel as a professional because Friedman-Fogel's services were completed prior to the Filing Date.

20. For the foregoing reasons, the Court must deny that part of the Motion which requests the Court to, in essence, direct Dayton to employ Friedman-Fogel as a professional.

### Friedman-Fogel's Claim to an Administrative Expense

21. Having previously determined that Friedman-Fogel was the procuring cause of the January Agreement, the Court finds that Friedman-Fogel has earned the Commission. Dayton concedes as much. The sole issue remaining for the Court is, therefore, whether the claim to the Commission is a general unsecured claim or an administrative expense.

22. Friedman-Fogel's request that its claim be awarded administrative priority is governed by § 503 of the Code.

■ 23. The law regarding administrative expense claims based upon contracts between the claimant and the debtor may be summarized as follows:

a. The services must have been rendered to, and actually benefit, the debtor in possession and must not be intended to further the self interest of the claimant. One who fully performs under a contract prior to the Filing Date is not entitled to an administrative expense, even though his services may result in a direct benefit to the estate after the Filing Date. *In re Mammoth Mart, Inc.,* 536 F.2d 950 (1st Cir.1976); *In re Jartran, Inc.,* 33 B.R. 339 (N.D.Ill. 1983); and *In re Hayes,* 20 B.R. 469 (W.D.Wis.1982).

---

b. Notwithstanding that the broker's fee may be payable after the petition is filed, the fee is earned when the broker produces a purchaser ready, willing and able to purchase the property on terms acceptable to the seller. *J.M. Fields,* supra; *In re Godwin Bevers,* 575 F.2d 805 (10th Cir.1978).

c. A broker's fee does not qualify as an administrative expense if the broker has not been authorized by the Court to render services to the estate. *In re Pollock,* 22 B.R. 673 (D.Mass. 1982); *In re Cummins,* 8 B.R. 701 (C.D.Cal.1981).

24. Application of the foregoing principles of law to the facts relevant to this proceeding compels the Court to conclude that Friedman-Fogel's claim to the Commission is a general unsecured claim and is not entitled to administrative priority.

25. Friedman-Fogel earned the Commission in January 1984 when the January Agreement was entered into by Dayton and Gemetal, a purchaser ready, willing and able to purchase the Plant on terms agreed to in writing by Dayton.

26. As a result, Friedman-Fogel's claim to the Commission arose in January 1984. The fact that the Commission was to be paid at a closing that might occur after the Filing Date is legally irrelevant to a determination of when Friedman-Fogel's claim arose.

27. Although Friedman-Fogel continued to be involved in the sale of the Plant between January 1984 and November 1984, the date the sale to Gemetal was consummated, such involvement was not intended to benefit the estate of Dayton, but rather to further Friedman-Fogel's interest in obtaining payment of the Commission. That such services may have resulted in a benefit to the estate of Dayton is legally irrelevant to a determination of when the claim to the Commission arose.

28. The Court will, therefore, enter order in favor of Dayton and against Friedman-Fogel in accordance with these findings of fact and conclusions of law.