**In re HSD VENTURE, formerly known as Harbor Drive Venture, a California general partnership, Debtor.**

**Bankruptcy No. 93–00273–B11.**

United States Bankruptcy Court, S.D. California.

Feb. 22, 1995.

**832**

John J. Dawson, Ronald E. Reinsel, Streich Lang, Phoenix, AZ, Dennis J. Wickham, Seltzer Caplan Wilkins & McMahon, San Diego, CA, for debtor.

Michael A. Morris, Stutman, Treister & Glatt, Los Angeles, CA, for movant.

Martin Bienenstock, Weil, Gotchal & Manges, New York City, for respondent.

John W. Cutchin, Duckor & Spradling, San Diego, CA, for Official Unsecured Creditors Committee.

Christopher L. Blank, Graham & James, Newport Beach, CA, for Resolution Trust Corp.

Tiffany L. Carroll, Office of the U.S. Trustee, San Diego, CA, for the U.S. Trustee.

## MEMORANDUM DECISION ON MOTION TO PAY CERTAIN REAL ESTATE COMMISSIONS

PETER W. BOWIE, Bankruptcy Judge.

Debtor has brought a motion to authorize payment to certain real estate brokers of commissions for sales of condominium units negotiated pre-petition, but which closed escrow post-petition. The Official Committee of Unsecured Creditors has opposed the motion, arguing that the realtors' claims are pre-petition general unsecured claims, not post-petition administrative claims. Debtor has replied that the claims should nonetheless be allowed as post-petition administra-

tive claims pursuant to 11 U.S.C. § 503(b)(3)(D) because of the substantial contribution made to the estate by the post-petition efforts of the realtors which resulted in the closing of escrow of certain sales. Certain of the brokers for whom commissions are sought are affiliates of debtor's principals, and are thus insiders under 11 U.S.C. § 101(31).

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## FACTS

Debtor constructed a twin tower complex totalling 202 condominium units, plus additional commercial space. Prior to filing bankruptcy, debtor entered into a number of sales agreements with prospective purchasers on contracts negotiated by realtors. Escrows were opened on those contracts, but were unable to close because the lenders required simultaneous closing of at least 50 units before any could close. Debtor was unable to meet that requirement.

Thereafter, debtor filed its petition in Chapter 11, and sought court relief from the 50 unit simultaneous closing requirement, as well as authority to sell units in the complex. After several days of testimony and argument this Court authorized the sale of units subject to certain conditions. One condition was that prior court approval was required before commissions to realtors could be paid.

Debtor now seeks court authorization to pay commissions on sales originally negotiated pre-petition. In support of the application, debtor has submitted uncontroverted declarations from realtors and buyers reflecting the efforts of the realtors post-petition to preserve the sales, whether on their pre-petition terms or as modified post-petition. Those sales have since closed and the debtor has set aside the unpaid commissions. None of the realtors for whom compensation has

been sought have been employed by the estate pursuant to 11 U.S.C. § 327.

## DISCUSSION

In support of its argument that the realtors' commissions are not payable as post-petition administrative expenses when the sales agreements were made and escrows were opened pre-petition, the Official Committee of Unsecured Creditors has cited to *In re Munple, Ltd.*, 868 F.2d 1129 (9th Cir. 1989). In that case, the debtor had entered into a commission agreement with a real estate brokerage firm pre-petition to find a purchaser for the debtor's land. The broker found a purchaser and a sales agreement was executed by all parties, which included a modification of the commission agreement. Problems arose between the debtor and the buyer before escrow closed. Debtor then filed a petition in bankruptcy under Chapter 11.

After filing bankruptcy, debtor moved to assume the land sales agreement as an executory contract. The court granted that motion. Upon learning of that action, the broker submitted a demand for payment of its commission on close of escrow. The debtor countered by moving to sell free and clear of the broker's claim. The bankruptcy court denied the debtor's motion and ordered payment of the commission on close of escrow. On appeal, the district court affirmed. On further appeal, however, the Court of Appeals for the Ninth Circuit reversed.

Upon review, the Ninth Circuit concluded that the commission agreement between the debtor and the broker was not executory at the time of filing of the bankruptcy. The court wrote:

> By the time the purchase agreement was signed, M & M [broker] had completed all the performance necessary to earn its commission if and when the sale closed. M & M had procured a buyer, which was all it was required to do to earn the commission....
>
> ... Although under the terms of the agreement M & M could receive its commission only if and when Munple and the buyer closed the sale, M & M had no material obligations left to perform. The condition precedent to Munple's obligation to pay the commission imposed no further obligations on M & M, nonperformance of which would have excused Munple from paying the commission. Because M & M had done everything required of it to earn the commission, the commission provision in the purchase agreement was not executory. In so concluding, we are in line with other decisions holding that brokerage commission agreements are performed when a buyer is procured, and are not made executory by a provision conditioning payment on closing the sale (Citations omitted.)

868 F.2d at 1130–31.

In *Munple*, the broker advanced the same argument asserted here—that it rendered substantial services post-petition to bring the sale to closing. The Ninth Circuit responded:

> Even if true, these facts do not render the commission agreement executory on M & M's part after it produced the buyer. While M & M may have had both the authority and the incentive to render further services after the purchase agreement was signed, the critical question is whether M & M was *required* to perform such services in order to earn its commission.

868 F.2d at 1131. *Accord, Indian River Homes, Inc. v. Sussex Trust Co.*, 108 B.R. 46, 49–50 (D.Del.1989); *In re Precision Carwash Corp.*, 90 B.R. 34, 38 (Bankr.E.D.N.Y.1988); *In re Moskovic*, 77 B.R. 421, 423 (Bankr. S.D.N.Y.1987); *In re Murtishi*, 55 B.R. 564, 569 (Bankr.N.D.Ill.1985); *In re Charter Co.*, 52 B.R. 267, 270 (Bankr.M.D.Fla.1985); *In re Gardinier, Inc.*, 50 B.R. 491, 494 (Bankr. M.D.Fla.1985), *aff'd* 831 F.2d 974 (11th Cir. 1987).

The debtor acknowledges and accepts the holding of *Munple*, as it must. The debtor further recognizes that the result of applying *Munple* to the facts establishes that the realtors are pre-petition general unsecured creditors of the debtor as of the date of filing of the bankruptcy petition. *Indian River Homes, Inc. v. Sussex Trust Co.*, 108 B.R. 46, 50 at n. 11 (D.Del.1989); *In re Jones*, 98 B.R. 399, 401 (Bankr.C.D.Ill.1988); *In re Mosko-*

*vic,* 77 B.R. 421, 423 (Bankr.S.D.N.Y.1987); *In re Charter Co.,* 52 B.R. 267, 271 (Bankr. M.D.Fla.1985); *In re Gardinier, Inc.,* 831 F.2d 974, 978 (11th Cir.1987); *In re Gardinier, Inc.,* 50 B.R. 491, 494 (Bankr.M.D.Fla. 1985); *In re Precision Carwash Corp.,* 90 B.R. 34, 38 (Bankr.E.D.N.Y.1988); *In re J.M. Fields, Inc.,* 22 B.R. 861 (Bankr. S.D.N.Y.1982).

Notwithstanding the foregoing the debtor asserts that the realtors' commissions should be allowed as a post-petition administrative expense because of the substantial services performed post-petition, and the substantial contribution made to the estate by the closing of the subject escrows. The court in *In re Munple, Ltd.,* 868 F.2d 1129 (9th Cir.1989) left a variation of this issue open. In its only footnote, the court wrote:

> M & M also argues that even if the commission agreement was not an executory contract under section 365 of the Bankruptcy Code, M & M's claim for payment should be given "administrative expense" priority under 11 U.S.C. § 503(b)(1)(A). This issue is not properly before us on appeal.

868 F.2d at 1131, n. 1. As noted, the declarations of realtors and buyers submitted by debtor are uncontroverted and establish that substantial post-petition efforts were made by the realtors which directly contributed to the sales closing.

In support of its position, debtor invokes 11 U.S.C. § 503(b)(3)(D). Section 503(a) authorizes the filing of a request for payment of an administrative expense. Subsection (b) sets out what may constitute an administrative expense. Subpart (3)(D) establishes that "administrative expense" may include:

> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>
> .   .   .   .   .
>
> (D) a creditor, ... in making a substantial contribution in a case under chapter 9 or 11 of this title,....

■ The issue posed by the debtor's argument can be phrased several ways. One way is to ask whether a pre-petition unsecured creditor may render post-petition services to a bankruptcy estate without prior court authorization of employment and thereby elevate a pre-petition general unsecured claim to administrative expense priority. Another way would ask if the same creditor, by rendering post-petition services, may properly present a claim for the reasonable value of those post-petition services which, in this case, equals the amount of the pre-petition general unsecured claim. Regardless of how the issue is posed in this case, where the pre-petition creditor is a real estate agent or broker who has not been employed by the estate post-petition [and cannot be so employed under 11 U.S.C. § 327 because not "disinterested" within the meaning of 11 U.S.C. § 101(14)], the answer is that such a creditor may not be allowed administrative expense priority.

The short version answer is found in the issue of employment. The Ninth Circuit has held that real estate brokers are required to be employed by an estate pursuant to 11 U.S.C. § 327(a) in order to be compensated from property of the estate. *In re Haley,* 950 F.2d 588 (9th Cir.1991). In so holding, the court wrote:

> Under the regime Section 327 establishes, the bankruptcy court controls the payment of any commission to Land West. Control by the bankruptcy court is necessary to enable the court to contain the estate's expenses and avoid intervention by unnecessary participants. "The purpose of the rule requiring prior court authorization of a professional's appointment is to eliminate volunteerism and thus aid the court in controlling estate administrative expenses." (Citations omitted.)

950 F.2d at 590. See, also, *In re Cummins,* 8 B.R. 701, 702 (Bankr.C.D.Cal.1981); *In re Pollack,* 22 B.R. 673, 675 (Bankr.D.Mass. 1982).

■ As the debtor acknowledges, the realtors in this case are pre-petition creditors and are therefore not disinterested as § 327(a) requires. Therefore, they could not be employed by the estate post-petition. *U.S. Trustee v. Price Waterhouse,* 19 F.3d 138 (3rd Cir.1994); *In re CIC Inv. Corp.,* 175

B.R. 52, 56 (9th Cir. BAP 1994); *In re Siliconix*, 135 B.R. 378 (N.D.Ca.1991). Consequently, the issue becomes whether a pre-petition unsecured creditor, who cannot be employed by the estate, can nevertheless provide post-petition services to an estate and have a claim for those services allowed as an administrative expense. This Court concludes the answer is in the negative. To hold otherwise would eviscerate §§ 327, 101(14) and the policies of control of employment of professionals and the requirement of their disinterestedness, including that they are not creditors of the estate. This Court's conclusion is buttressed by the recent holding of the Ninth Circuit in *In re Occidental Financial Group, Inc.,* 40 F.3d 1059, 1063 (9th Cir.1994). The court held:

> Halperin also argues for a quantum meruit award of those attorney fees barred as a matter of law by his failure to obtain prior court approval. As a general rule the equitable remedy of quantum meruit cannot be available where the fees are barred by law under the bankruptcy rules.

The court cited with approval *In re Shirley*, 134 B.R. 940 (9th Cir. BAP 1992) to the same effect.

*In re Shirley* involved an attorney who rendered services to the debtor and the bankruptcy estate without having been employed with court approval. The bankruptcy court denied the attorney's fee request for that reason, and the attorney sought relief from stay to pursue his fee claim under state law against the debtor. The bankruptcy court denied relief from the stay and the Bankruptcy Appellate Panel affirmed. The court wrote:

> Court approval of the employment of counsel for a debtor in possession is *sine qua non* to counsel getting paid. Failure to receive court approval for the employment of a professional in accordance with § 327 and Rule 2014 precludes the payment of fees. (Citations omitted.) ...

> · · · · ·

The rationale behind the requirement of prior court approval for the employment of professionals is to guard against abuses: "The reason for the rules relating to retention of professional personnel and the setting of their fees is to protect the estate and its creditors from unwarranted and gratuitous claims." (Citation omitted.)

Another approach to the issue yields a similar result. As already noted, professionals, including real estate brokers are required to be employed under § 327. If they are employed under § 327, then they are eligible for compensation under § 330(a). In turn, compensation and reimbursement allowed under § 330(a) are entitled to administrative expense status under the express provision of § 503(b)(2). The Bankruptcy Appellate Panel recently considered whether a professional who was not employable under § 327(a) could have an administrative expense claim allowed under § 503(b)(1). The court wrote:

> If compensation cannot be awarded under Section 503(b)(2), then the question is whether it can be awarded under Section 503(b)(1). McCutchen argues that it can. However, such an interpretation of Section 503 renders Section 503(b)(2), as well as Section 327, "nugatory." (Citation omitted.) ...

> For an attorney, the test for receiving compensation would appear nearly identical under both sections. It is reasonable then, to construe Section 503(b)(2), with its specific reference to compensation to professionals under Section 330, as the only part of Section 503(b) under which such professionals can receive compensation.

*In re Weibel, Inc.,* 176 B.R. 209 (9th Cir. BAP 1994). (The Weibel court also denied the firm's request for compensation on a quantum meruit basis, citing *In re Shirley,* supra.) See, also, *Matter of Singson,* 41 F.3d 316, 320 (7th Cir.1994).

A consistent answer is found in examination of the few relevant cases decided under § 503. *In re Precision Carwash Corp.,* 90 B.R. 34 (Bankr.E.D.N.Y.1988), involved a similar situation. There, a broker was engaged pre-petition to sell the debtor's assets and an agreement was struck. Thereafter, bankruptcy was filed and the sale subsequently closed. The broker sought allowance of its commission as an administrative ex-

pense. In reviewing other decisions, the court stated:

"A creditor provides consideration for bankrupt's estate only when the debtor-in-possession induces the creditor's performance and performance is then rendered to the estate. If the inducement came from the pre-petition debtor, then consideration was given to that entity rather than to the debtor-in-possession." (Citations omitted.) Where the liability for the services in question is irrevocably incurred before the petition is filed, such services are not induced by the debtor-in-possession and do not qualify for administration [sic] status.

If the liability is incurred pre-petition, the fact that payment may be dependent upon a post-petition contingency is irrelevant. (Citations omitted.)

If a debt is not entitled to administrative priority the debtor or debtor-in-possession cannot by word or deed entitle it to such treatment. If the creditor's services have been fully performed pre-petition and all that remains is the payment of money, the debtor cannot give the debt administrative status by (1) accepting the benefits of the creditor's services; (2) purporting to assume the underlying contract; or (3) entering into a contract post-petition to pay the debt.

90 B.R. at 38. Administrative expense status was denied. *Accord, In re Charter Co.,* 52 B.R. 267 (Bankr.M.D.Fla.1985). See, also, *In re Lease–A–Fleet, Inc.,* 148 B.R. 419, 425–27 (Bankr.E.D.Pa.1992).

The court in *In re Lease–A–Fleet, Inc.,* 148 B.R. 419 (Bankr.E.D.Pa.1992), reviewed a number of the considerations applicable to a request under § 503(b)(3)(D). The court restated criteria from an earlier opinion, writing:

[T]he purpose of allowances of administrative expenses is to encourage a debtor's creditors and other parties to continue to provide services which will aid the debtor in successful reorganization. This purpose must, however, be balanced with another bankruptcy policy which is "to provide creditors with an equal distribution of a debtor's resources." [*In re Lease–A–Fleet,*

*Inc.*], 140 B.R. [840] at 844 [(Bkrtcy. E.D.Pa.1992)]. Consequently, any requests for administrative expenses are "narrowly construed." *Id.* And, since requests for administrative priorities must be "narrowly construed", the criteria for determining whether such treatment should be afforded is demanding.

148 B.R. at 425. Later in the opinion, the court observed:

In addition to the general criteria discussed above, courts considering the issue of "substantial contribution" under § 503(b)(3)(d) [sic] have noted several special factors which will preclude the allowance of such claims. One of these factors is when the payments made by a claimant are in its own "self interest." Self-interest is found to exist where the expense at issue was incurred primarily for the benefit of the creditor and provided only an incidental benefit to the estate. The presence of self-interest mandates denial of a § 503(b)(3)(D) claim. (Citations omitted.)
. . .

Although a § 503(b)(3)(D) claimant must perform a service not already being performed by the debtor or other interested parties, the claimant cannot supplant the debtor's role unless it shows that the debtor is unable or unwilling to act. (Citations omitted.)

In assessing whether an expense is "primarily" for the benefit of the creditor or of the estate, courts have focused upon the relationship of the creditor to the estate. Courts have been very reluctant to allow administrative claims to insiders of a debtor under § 503(b)(3)(D) or otherwise. (Citations omitted.)

148 B.R. at 426–27.

■ In this case, the realtors earned their commissions pre-petition, although they may not have been payable unless the escrows closed. It was in the realtors' interest to continue to work the sales they had negotiated pre-petition. That some of the sales closed, generating funds for the estate, simply helped to create a fund in which all pre-petition unsecured creditors could participate ratably. But those efforts do not support elevating the realtors' pre-petition unsecured

claims to post-petition administrative claim priority. Particularly is this so with respect to the realtors who are affiliates of the debtor, or employed by those affiliates.

### CONCLUSION

For all the foregoing reasons the debtor's motion to allow payment of certain real estate commissions as administrative expenses is denied. The claims are allowed as general unsecured pre-petition claims.

IT IS SO ORDERED.