### In re SNOWCREST DEVELOPMENT GROUP, INC. d/b/a Bergeron & Fox Builders, Debtor.

### Bankruptcy No. 95–44802 HJB.

United States Bankruptcy Court, D. Massachusetts.

Sept. 19, 1996.

---

Alan S. Dambrov, Springfield, MA, for the Official Unsecured Creditors Committee.

Peter M. Stern, Springfield, MA, for Landry, Lyons & Whyte Co., Inc.

Jonathan R. Goldsmith, Springfield, MA, for Debtor.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination is an "Application by the Debtor for Authority to Employ and Compensate a Real Estate Broker" (the "Application"). Prior to the commencement of the case, Snowcrest Development Group, Inc. (the "Debtor") employed Landry, Lyons & Whyte Company, Inc. (the "Broker") to market and sell certain properties owned by the Debtor. The Application

1. The Application also sought authority to continue the employment of the Broker postpetition. This aspect of the Application was allowed by the Court on February 14, 1996 "as to buyers secured[sic] on and after the date of the filing of the [A]pplication [November 22, 1995]."

2. The Application is unclear as to whether there was one or more than one listing agreement, and copies were not provided. The Application only says that the terms of employment were as set forth in the form listing agreement annexed to the Application. The Court will assume that

seeks authority to pay the Broker's commissions at the time the sales are closed.[1] The Unsecured Creditors' Committee (the "Committee") objects to the Application because, in some instances as set forth below, the services of the Broker were rendered either prepetition or postpetition, but before the Application was filed. The Court must determine whether the Broker's claims for commissions on the sales of six separate properties should be treated as administrative expense claims, general unsecured claims, or should be disallowed.

### I. Facts

The material facts are not in dispute, except as specifically noted below.

On October 23, 1995 (the "Filing Date"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is a real estate development and residential home building business. Its assets consist primarily of residential building lots (both improved and unimproved) located throughout Western Massachusetts.

Prior to the Filing Date, the Debtor hired the Broker to market and sell the Debtor's properties. The terms and conditions of the Broker's employment (the "Commission Agreements") were set forth in the form of the Exclusive Right to Sell Listing Agreement annexed to the Application. (Application, Par. 5).[2] Under the terms of the Commission Agreements, the Debtor agreed to pay the Broker a 5% commission on the sales of improved property and a 6% commission on the sales of unimproved property if the Broker procured a buyer. The Broker assumed no responsibility in the agreements to perform any other material services.

there was a separate Commission Agreement for each property, but that assumption does not appear material to the issues presented. Also, neither the Debtor in its Application, nor the Broker in its supporting memorandum, provided a copy of any purchase and sale agreement. Under the circumstances, the Court is satisfied that either the employment and commission provisions of the different documents are materially similar or that the Debtor and the Broker have waived the right to argue otherwise.

As of the Filing Date, the Debtor owned numerous residential properties on which structures were built or under construction and in various stages of being sold. Not unexpectedly, the bankruptcy case filing created a great deal of confusion and uncertainty among potential buyers as to whether the transactions would be completed. As a result, the Broker, at the Debtor's request, continued to provide services after the Filing Date to keep the transactions viable. For example, the Broker held conferences and telephone conversations with the buyers; obtained extensions for the times for performance; and made trips to the properties to secure them from vandalism. The Broker even spent some $1,200 of its own funds to protect and clean the properties prior to the closings.

On November 22, 1995 (approximately 30 days after the Filing Date), Debtor's counsel filed the instant Application, seeking to employ the Broker postpetition and to pay the Broker commissions for the following six transactions scheduled to close postpetition:

| Property | Commission |
| --- | --- |
| 165 Warren Road, Wilbraham, MA | $ $9,850.00 |
| 170 Warren Road, Wilbraham, MA | 10,325.00 |
| 9 Elliott Lane, Wilbraham, MA | 11,000.00 |
| 2 Baptist Hill Road, Palmer, MA | 6,685.00 |
| 35 Gary Road 3, Westfield, MA | 8,250.00 |
| 244 Denver Street, Springfield, MA | not set forth |

Each of the foregoing properties was listed with the Broker prior to the Filing Date. In each case, other than with respect to the Gary Road and Denver Street properties, the purchase and sale agreement was also executed prior to the Filing Date. With respect to the Gary Road property, while the purchase and sale agreement was executed after the Filing Date, the buyer's offer to purchase was tendered to the Debtor prior to the Filing Date. In the case of the Denver Street property, the buyer's offer to purchase was tendered only four (4) days after the Filing Date (but of course prior to the filing of the Application).

The Committee did not object to the postpetition employment of the Broker with re-

spect to future sales as to which the buyers were procured after the date of the filing of the Application. However, the Committee did object to payment to the Broker for commissions as to each of the six (6) sales set forth above.

Upon conclusion of the hearing on the Application, the Court allowed the Application as to buyers procured by the Broker on or after the filing of the Application. However, with respect to payment of the commissions contested by the Committee on the aforesaid six (6) sales—that is, relating to buyers procured by the Broker either prepetition or prior to the filing of the Application—the Court took the contest under advisement.

## II. Positions of the Parties

The Broker asserts that its claims for commissions are entitled to administrative priority. The Broker offers three alternative arguments in support of this assertion. First, the Broker argues that because it continued to perform services after the Filing Date, its claims constitute "commissions for services rendered after the commencement of the case" and thus are entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(1)(A). Second, the Broker argues that because the Debtor induced the Broker to render services postpetition, and because these services conferred a benefit to the estate, the Broker's claim is entitled to administrative priority under principles of restitution and unjust enrichment. Finally, the Broker contends that the purchase and sale agreements are executory contracts that have been assumed by the Debtor.

The Committee argues that the Broker earned its commissions on the sales of the subject properties prepetition and thus the Broker's claims are allowable only as general unsecured claims.[4] In the alternative, the Committee asserts that, to the extent that the Court finds significant services by the Broker to have been rendered postpetition,

3. The parties' pleadings refer to this property as both 35 Gary Road and 35 Gary Drive.

4. The Committee scoffs at the notion that the buyer for the Denver Street property was procured after the Filing Date since the offer to purchase followed the Filing Date by only four (4) days.

the First Circuit's decision in the case of *In re Jarvis,* 53 F.3d 416 (1st Cir.1995) precludes *post facto* approval of the Application.

### III. *Discussion*

#### A. The Commission Agreements as Executory Contracts

█ The Broker argues that under Massachusetts law the purchase and sale agreements are executory contracts which have been assumed by the Debtor; and thus, the commissions are costs of administration. The first issue which must be addressed is whether the purchase and sale agreements and the Commission Agreements are separate contracts which may be individually assumed or rejected.

█ It is well established that a purchase and sale contract and an agreement to pay a commission constitute two separate agreements, even when they are contained in a single document. *Byrd v. Gardinier, Inc. (In re Gardinier, Inc.),* 831 F.2d 974, 976 (11th Cir.1987), *cert. denied,* 488 U.S. 853, 109 S.Ct. 140, 102 L.Ed.2d 112 (1988) (commission agreement contained only in contract for sale of real estate was separate agreement); *Coldwell Banker & Co. v. Godwin Bevers Co., Inc. (In re Godwin Bevers Co., Inc.),* 575 F.2d 805, 807 (10th Cir.1978); *Indian River Homes, Inc. v. The Sussex Trust Co.,* 108 B.R. 46, 49 (D.Del.1989); *In re L.D. Patella Constr. Corp.,* 114 B.R. 53, 57 (Bankr.D.N.J.1990); *In re Moskovic,* 77 B.R. 421, 422 (Bankr.S.D.N.Y.1987); *see In re J.M. Fields, Inc.,* 22 B.R. 861, 863 (Bankr. S.D.N.Y.1982). *But see In re Clavis Smith Bldg., Inc.,* 112 B.R. 768, 770 (E.D.Va.1990). Therefore, even if the purchase and sale agreements are executory, the Court must separately determine whether the Commission Agreements themselves are executory contracts, pursuant to 11 U.S.C. § 365.

This Court has previously adopted the definition of an executory contract proffered by Professor Vern Countryman. *See In re Boutiette,* 168 B.R. 474, 480 (Bankr.D.Mass.1994). An executory contract is

a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that

the failure of either to complete the performance would constitute a material breach excusing the performance of the other. Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973).

█ In order to determine whether a contract is executory the Court looks first to state law. Under Massachusetts law, a broker's commission is earned when (1) the broker produces a purchaser ready, willing and able to buy on the terms fixed by the owner; (2) the purchaser enters into a binding contract with the owner to do so; and (3) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract. *Hillis v. Lake,* 421 Mass. 537, 542, 658 N.E.2d 687, 689 (1995); *Tristram's Landing, Inc. v. Wait,* 367 Mass. 622, 629, 327 N.E.2d 727, 731 (1975). The Broker contends that because the closing of the transactions was a condition precedent to the payment of the commissions, and since the closings did not occur until after the Filing Date, the purchase and sale agreements are executory contracts which were assumed by the Debtor.

This Court is at somewhat of a loss to understand how or when the Broker believes that the Commission Agreements were assumed. Certainly this Court's approval of the sales under 11 U.S.C. § 363 did not constitute the assumption of the Commission Agreements. Assumption of an executory contract is possible only with the benefit of a court order and after notice and hearing. § 365(a); *see Thinking Mach. Corp. v. Mellon Fin. Serv.,* 67 F.3d 1021, 1028 (1st Cir. 1995). No such hearing has been held relative to the assumption of the Debtor's Commission Agreements with the Broker. No such order has been entered.

█ Furthermore, even if this seemingly insurmountable obstacle could be overcome, the majority of cases have held that brokerage commission agreements are materially performed when a buyer is procured, and are not made executory by a provision conditioning payment of the commission on closing or other conditions precedent. *Marcus & Millichap Inc. v. Munple, Ltd. (In re Munple,*

*Ltd.)*, 868 F.2d 1129, 1130–31 (9th Cir.1989); *Godwin Bevers*, 575 F.2d at 807; *In re HSD Venture*, 178 B.R. 831, 833 (Bankr.S.D.Cal. 1995); *In re Precision Carwash Corp.*, 90 B.R. 34, 38 (Bankr.E.D.N.Y.1988); *Moskovic*, 77 B.R. at 423; *In re The Charter Co.*, 52 B.R. 267, 270 (Bankr.M.D.Fla.1985); *see Indian River*, 108 B.R. at 49 (applies Delaware law); *Jones v. State Bank of Arthur (In re Jones)*, 98 B.R. 399, 401 (Bankr.C.D.Ill.1988) (applies Illinois law); *J.M. Fields*, 22 B.R. at 865.

In *Munple*, the Ninth Circuit dealt with precisely the issue before this Court. That court held that the contingency of closing did not render the contract executory. 868 F.2d at 1130–31; *see Godwin Bevers*, 575 F.2d at 807; *HSD Venture*, 178 B.R. at 833; *Precision Carwash*, 90 B.R. at 38; *Moskovic*, 77 B.R. at 423; *J.M. Fields*, 22 B.R. at 864. The court explained that although the broker could receive its commission only if and when the sale was closed, once the broker procured a buyer, the broker had no remaining obligations the failed performance of which were sufficiently material to excuse the debtor from paying the commission. *Munple*, 868 F.2d at 1130. The court noted that while the broker in that case may have had both the authority and incentive to render further services after it produced a buyer, the broker was not required to perform such services in order to earn its commission. *Id.* at 1131; *see HSD Venture*, 178 B.R. at 833; *L.D. Patella*, 114 B.R. at 56. *Contra Clavis Smith*, 112 B.R. at 770 (Once buyer was found, broker in that case still had material obligations to fulfill such as nursing sale through and overseeing completion of construction); *see In re Timberline Property Dev., Inc.*, 115 B.R. 787, 794 (Bankr.D.N.J. 1990) (Where state law was identical to that of Massachusetts, court found that broker earns commission only when sale is consummated; not when buyer is procured). For these reasons, the *Munple* court held that where the buyer was found prepetition, the commission agreement was fully performed and thus was not an executory contract. 868 F.2d at 1131.

■ Similarly, Massachusetts law does not impose material obligations on the broker after the buyer is procured, absent contractual provisions to the contrary. *See L.D. Patella*, 114 B.R. at 56 (Where state law was identical to that of Massachusetts, court noted that services rendered between contract and closing are gratuitous); *Munple*, 868 F.2d at 1130; *Hillis*, 421 Mass. at 546, 658 N.E.2d at 691. While the Broker in this case may have rendered postpetition services in order to protect the transaction for the benefit of the Debtor (and obviously for its own benefit), the Broker has not demonstrated that it had an obligation to do so *or* that the failure of the Broker to so perform would have constituted a breach of its obligation to the Debtor so material as to excuse the Debtor from paying the commissions. Absent the presence of an obligation within these parameters, the Commission Agreements were fully performed and no longer executory when a buyer was procured.

■ Turning to the transactions at issue, the purchase and sale agreements for 165 Warren Road, 170 Warren Road, 9 Elliott Lane, and 2 Baptist Hill Road, were executed before the Filing Date. Since the buyers were procured before the Filing Date, the Broker's commissions on these properties constitute prepetition general unsecured claims. With respect to 35 Gary Road, although the purchase and sale agreement was executed postpetition, the offer to purchase was tendered to the Debtor prepetition. As a result, the buyer was procured prepetition and the Broker's claim for its commission on this property is also a general unsecured claim. Finally, the offer to purchase 244 Denver Street was tendered four (4) days after the Filing Date. The Broker contends that its claim for this commission is a postpetition claim because the buyer was procured after the Filing Date. The Committee disputes the timing of that procurement. Therefore, as is set forth in greater detail below, the Committee is entitled to an evidentiary hearing as to whether the buyer was procured prior to or after the Filing Date.

**B. Administrative Expense Priority Pursuant to § 503(b)(1)(A) for Postpetition Services**

Alternatively, the Broker argues that because it provided postpetition services which

benefitted the estate, it is entitled to some or all of the commissions as an administrative expense claim with priority under § 503(b)(1)(A).

11 U.S.C. § 507(a)(1) grants first priority status to "administrative expenses allowable under 503(b)...." Section 503(b), in turn, provides for the allowance of various expenses as administrative expenses including:

(1)(A) The actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case....

The Broker argues that it is entitled to payment for postpetition services in two (2) different ways. First, the Broker asks the Court to award it payment for the services which it rendered to the estate after the Filing Date in safeguarding each of the six (6) sales. But the Debtor has failed to distinguish between (i) services which it ordinarily would have rendered in procuring the buyer through the date of closing; and (ii) services which it might have rendered postpetition to safeguard the sales from difficulties created by the bankruptcy case filing itself.

As to the former, it is too late now, with respect to at least five (5) of the sales, to switch gears and recharacterize the basis for the Broker's postpetition services, just because the Court has determined that the Broker's claims for the commissions arose prior to the Filing Date and are therefore general unsecured claims. As to the latter, the Broker fails to recognize a critical distinction between § 503(b)(1)(A) and § 503(b)(2). In addition to the administrative expenses allowed by § 503(b)(1)(A), § 503(b)(2) further authorizes the payment of "compensation and reimbursement awarded under section 330(a)" as an administrative expense. Section 330(a) in turn requires that a professional person be employed pursuant to 11 U.S.C. § 327. Thus, § 503(b)(1) and § 503(b)(2) differentiate between the costs and expenses of preserving the estate and compensation awarded to professional persons. *In re Channel 2 Assoc.*, 88 B.R. 351,

352 (Bankr.D.N.M.1988); *see Timberline*, 115 B.R. at 794. Section 503(b)(2) provides the sole means by which a professional may receive payment as an administrative expense. *See F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 108–09 (3d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988); *McCutchen, Doyle, Brown & Enersen v. Official Comm. of Unsecured Creditors (In re Weibel, Inc.)*, 176 B.R. 209, 213 (Bankr. 9th Cir.1994); *HSD Venture*, 178 B.R. at 835; *Channel 2 Assoc.*, 88 B.R. at 352. Section 503(b)(1)(A) is inapplicable to a professional person whose employment is required by § 327. *See Id.*

Thus, § 503(b)(1)(A) cannot be used as a way to circumvent the requirements of § 327(a). *See, e.g., In re Singson*, 41 F.3d 316, 320 (7th Cir.1994); *F/S Airlease II*, 844 F.2d at 109; *Weibel*, 176 B.R. at 213; *HSD Venture*, 178 B.R. at 835; *Timberline*, 115 B.R. at 794; *Channel 2 Assoc.*, 88 B.R. at 352; *The Charter Co.*, 52 B.R. at 271; *see also In re Pollock*, 22 B.R. 673, 675 (Bankr. D.Mass.1982). To hold otherwise would eviscerate the requirements of § 327.[5] *HSD Venture*, 178 B.R. at 835.

In order to comply with § 503(b)(2) and § 327, the Broker will have to not only detail its services and demonstrate their distinctive nature as set forth above, but also overcome the obstacle presented by the case of *In re Jarvis*, 53 F.3d 416 (1st Cir.1995). In *Jarvis*, the First Circuit Court of Appeals held that a bankruptcy court may grant *post facto* approval of an untimely application for the employment of a professional *only* where (1) the employment satisfies the statutory requirements, and (2) the delay in seeking court approval resulted from extraordinary circumstances. 53 F.3d at 418.

In view of the foregoing, the Court will grant to the Broker an evidentiary hearing to afford the Broker an opportunity to demonstrate not only that it rendered to the estate after the Filing Date services, unrelated in character to services normally associated with its prepetition claim, but also that any

---

5. Similarly, even if this Court had found that the Commission Agreements were executory contracts, such contracts could be assumed only to

the extent that there was compliance with § 327(a). *See Timberline*, 115 B.R. at 792; *Channel 2 Assoc.*, 88 B.R. at 352–53.

untimeliness in the Broker seeking employment between the Filing Date and the date of the filing of the Application (approximately 30 days) was itself based on extraordinary circumstances.[6]

In addition, the Broker contends that its claim for commissions on the Denver Street property arose after the Filing Date because the buyer was procured after the Filing Date. The Committee disputes the timing of that procurement. However, even if the Broker's averment is accurate, the Broker must still meet the requirements for approval of employment set forth in *Jarvis*. The Court will therefore, as noted above, schedule an evidentiary hearing in order to determine whether the buyer was procured prior to the Filing Date, and, if the Court finds that the buyer was procured after the Filing Date, the Court will take evidence on whether extraordinary circumstances would justify the Application's untimeliness.

## C. Restitution and Unjust Enrichment

▇ Finally, the Broker argues that it is entitled to payment for the *value* of the postpetition services it rendered to the Debtor in all six (6) transactions. The Broker relies on the case of *Goldin v. Putnam Lovell, Inc. (In re Monarch Capital Corp.)*, holding that under the circumstances there presented, principles of restitution and avoidance of unjust enrichment would support payment to a broker who rendered postpetition services pursuant to its prepetition contract, without objection by the Debtor, with resulting value to the estate. 163 B.R. 899, 907 (Bankr.D.Mass.1994).

The Broker's reliance on the *Goldin* case is misplaced for two reasons. First, in *Goldin*, the court found that the broker was acting pursuant to an executory contract not yet fully performed and not yet assumed or rejected by the debtor. The court found it anomalous that the broker would be bound to perform its obligations under the contract, but the estate would be relieved from its obligation to pay for a resulting benefit. In the instant case, this Court has found no executory contract in existence on the Filing Date with respect to sales of at least five (5) of the properties, because the broker's material obligations with respect to those sales were fully performed as of the Filing Date.

Second, the *Goldin* case predated the *Jarvis* case. Consideration of *Jarvis* may or may not have altered the *Goldin* court's analysis. This Court finds that application of *Jarvis* precludes an award of the commissions to the Broker, based on any theory of restitution or unjust enrichment. The overriding element of such theories is the benefit conferred on the party from whom payment is sought. *See* Restatement (Second) of Contracts § 370 (1982). However, *Jarvis* expressly precludes that consideration when determining the propriety of *post facto* employment under § 327. 53 F.3d at 422. An argument for payment of the commissions based on unjust enrichment is, therefore, not viable in light of the mandates of *Jarvis*. Payment under these circumstances based only on the benefit to the estate would in fact promote an end run of the policies set forth in *Jarvis*.

## IV. *Conclusion*

In the instant case, the Commission Agreements for 165 Warren Road, 170 Warren Road, 9 Elliott Lane, 2 Baptist Hill Road, and 35 Gary Road were materially performed by the Broker prior to the Filing Date. Therefore, the Broker's claims resulting therefrom are prepetition general unsecured

---

6. To the extent that the Court has now found that the Broker held a prepetition claim as of the Filing Date, the postpetition employment of the Broker *may* not comport with the disinterestedness requirement of § 327. *See In re Hub Business Forms, Inc.*, 146 B.R. 315 (Bankr.D.Mass. 1992). However, the Court need not decide today whether to follow *Hub Business Forms*. The Court's order of February 14, 1996 authorizing the Broker's postpetition employability is the law of the case. *See United States v. Rivera–Martinez*, 931 F.2d 148, 151 (1st Cir.), *cert. denied*, 502 U.S. 862, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991); *150 North St. Assoc. Ltd. Partnership v. City of Pittsfield (In re 150 North St. Assoc. Ltd. Partnership)*, 184 B.R. 1, 5 (Bankr.D.Mass.1995); *McDonough v. Plaistow Co-op. Bank (In re McDonough)*, 166 B.R. 9, 13 (Bankr.D.Mass.1994). Furthermore, it would be grossly inequitable were the Court to deny the Broker's postpetition employment on account of a prepetition claim the existence of which was in reasonable dispute as of the Filing Date.

claims. Services rendered after the Filing Date with respect to those sales are not allowable under § 503(b)(1)(A). However, the Court will grant to the Broker an evidentiary hearing to afford the Broker an opportunity to demonstrate that (1) it rendered to the estate after the Filing Date services unrelated in character to services normally associated with its prepetition claims; and (2) any untimeliness in the Broker seeking employment between the Filing Date and the date of the filing of the Application was based on extraordinary circumstances.

In addition, at the evidentiary hearing the Court will consider the question of when the Broker procured the buyer for the Denver Street property. If the Court finds that the buyer was procured *prior* to the Filing Date, the Court will allow the Broker a general unsecured claim for its commission. If the Court finds that the Broker procured the buyer for the property *after* the Filing Date, the Court will also take evidence on the existence of any extraordinary circumstances averred by the Broker to justify the untimeliness of the Application relative to the Broker's employment with respect to that sale. A separate Order shall issue in conformity with this Memorandum.